# WOLFE et al. v. SUPREME LODGE KNIGHTS AND LADIES OF HONOR, Appellant.

### Division Two, March 12, 1901.

1. **Practice**: THEORY OF TRIAL: CHANGE ON APPEAL: INSURANCE POLICY.    Parties can not elect to try their case on one theory and when defeated on that line assume a different theory in the appellate

Wolfe v. Supreme Lodge.

court. Where neither the answer nor instructions asked, were drawn on the theory that the answers made by the insured to questions propounded to him in his written application for a policy were warranties, the appellate court will leave that theory of defense out of view in disposing of the case.

2. ———: INSTRUCTION: AMPLIFYING DEFENSE. An instruction should not be broader than the pleading on which it is founded. Where the answer sets up as a defense to a suit on an insurance policy, that the insured made false answers to three specific questions in regard to his health, an instruction should be refused which states the policy is void if he made any false answer.

3. ———: REFUSING DEFENDANT'S INSTRUCTION. Defendant can not complain that its instruction was refused if one given by the court of its own motion set forth the same defense.

4. ———: OMISSION OF WORDS, "YOU WILL FIND FOR DEFENDANT." The court told the jury, in a suit on an insurance policy, that the burden of showing that the answers made by the applicant were false, was on the defendant company, but omitted to say, "If you find said answers were false, you will find for defendant," but previously in the same instruction they were told this was the defense. Held, that, the falsity of these answers being the only issue to which the evidence was directed, the omission, under the circumstances, was not reversible error.

5. Evidence: ACCOUNT BOOK: SUBMISSION TO JURY. The passing of a doctor's account book around to the jury, is putting it in evidence, although the court may afterwards on rebuttal refuse to permit it to be offered in evidence.

6. ———: WEIGHT AND CREDIBILITY. It is not the province of the appellate court to pass upon the weight of the evidence or the credibility of the witnesses; and where there was a sharp conflict in the evidence at the trial, and substantial evidence was produced to sustain the verdict, this court will not interfere.

Appeal from St Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Frank M. Estes* for appellant.

(1)   The court erred in its instructions to the jury. Barr v. Kansas, 105 Mo. 559; Cameron v. Hart, 57 Mo. App. 142; O'Hara v. Aid Soc., 134 Pa. St. 417; Maine Ben. Assn. v. Parks, 81 Me. 79; Whitemore v. K. & L. of H., 100 Mo. 36; Numerich v. K. & L. of H., 3 N. Y. Supp. 552; Cobb v. Ben. Assn., 153 Mass. 176.   (2)   The court erred in refusing instructions 1, 2, 3 and 4 offered by the defendant.   Aloe v. Life Assn., 147 Mo. 561; Hanford v. Ben. Assn., 122 Mo. 50; Haney v. Indem. Co., 139 Mo. 416; Jacob v. Life Assn., 142 Mo. 49; Richards v. Ins. Co., 68 Mo. App. 585.   (3) The office-book of witness Dr. Barker, showing dates that De Mars visited his office for treatment, was competent testimony; the court erred in excluding it from the jury.   Anchor Milling Co. v. Walsh, 108 Mo. 277; Robinson v. Smith, 111 Mo. 205; Seligman v. Rogers, 113 Mo. 642.

*R. S. Mac Donald, T. J. Rowe* and *Hickman P. Rodgers* for respondents.

(1)   The instruction given by the court set forth the same defense as those offered by appellant, and cured any possible error there may have been in refusing the latter. Whittemore v. Supreme Lodge, 100 Mo. 47.   (2)   Appellant can not complain of an error in an instruction given by the court, when the instruction asked by appellant contained the same error.   Noble v. Blount, 77 Mo. 235; Bettes v. Magoon, 85 Mo. 580; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 559; State to use v. O'Neill, 151 Mo. 81.   (3) The Supreme Court will not weigh the evidence and disturb the verdict of the jury, unless there is no evidence at all upon which to base it.   Baum v. Fryrear, 85 Mo. 151; Williams v. Railroad, 109

Mo. 483; James v. Life Ass'n, 148 Mo. 15.   (4) (a) In the absence of satisfactory explanation of appellant's failure to offer the office-book of witness Dr. Barker, as a part of its evidence in chief, there was no error in the refusal of the trial court to admit it in rebuttal.   This was the exercise of discretion with which this court will not interfere.   Jackson v. Railroad, 118 Mo. 221.   (b)   The use made of said book at the trial was, in fact, an introduction in evidence.   Charles v. Patch, 87 Mo. 467.

GANTT, J.—This is an action on a benefit certificate, issued by the defendant, a benevolent organization, by the beneficiaries therein, the mother and grandmother, respectively, of Alexander L. De Mars, deceased, a member of said order, for the amount of said certificate, $3,000.

The case was tried on the issue raised by plaintiffs reply to the affirmative defense set up in defendant's answer, the allegations in the petition being admitted.

The evidence disclosed that plaintiffs were the mother and grandmother of deceased, the insured, who was a young man about nineteen years old and a brass-worker at the time his application was made for membership in the order.   Just at the time he was admitted into the organization he was out of work, owing to a disagreement with his employer over his wages.   The evidence was very conflicting as to the state of his health at the time of his application for membership.   It appears, however, that he was duly examined by the regularly appointed physician of the order, the risk accepted and De Mars was on June 20, 1895, duly initiated into Royal Lodge at St. Louis.

On the part of plaintiffs there was a number of witnesses who testified that he was in good health about the time of the application.   Indeed it seems uncontradicted that he partici-

pated in a cake-walk and dance given by the lodge the meeting before the one at which he made his application to said lodge, and shortly afterwards when he was initiated he was required to walk several times around the lodge room and was subjected to close scrutiny by the guides and members.

The medical examiner certified the following questions and answers:

"Have you made careful ausculation and percussion of the thorax? I have.

"Is the character of the respiration full, easy and distinct over both lungs? It is.

"Is there any indication of disease of the organs of respiration or their appendages? None.

"In your opinion, is there any habitual cough, or expectoration or occasional difficulty in breathing? None."

De Mars died in April, 1896. Payment was refused on the ground that he had made untruthful answers to questions put to him by the medical examiner.

He was asked if he was "afflicted with any lung disease," and answered "no"; and asked how long since he had been attended by a physician, or if he had "professionally consulted one," and he answered, "haven't had any," and stated that he was in good health at that time and that he usually enjoyed good health.

On the part of the defendant the evidence tended to show that between the dates of December 10, 1894, and March 15, 1895, De Mars consulted with and was prescribed for by Dr. Grant; that when he went to Dr. Grant's office he was accompanied by his mother; that he made three visits to Dr. Grant, and that the doctor told the mother that the boy was in a serious condition. That on April 11, 1895, De Mars, accompanied by his mother, consulted with and was prescribed for by Dr. Barker, and that Dr. Barker told the mother that the boy was afflicted with consumption.

Dr. Barker, with his office-book in his hands while on the witness stand, gave dates during April, May, June, July, August and up to February, 1896, when De Mars called at his office for treatment; and stated that the whole treatment given De Mars during all of the spring, summer and fall of 1895, and the early part of 1896, from beginning to end, was for consumption.

Dr. Barker also testified that De Mars and his mother called at his office in the month of April, the month before the application was made; that De Mars was at that time emaciated and of a bluish color, and that he told his mother at that time that her son had lung disease and was in a serious condition. That was contradicted by Mrs. Wolfe, who said that it was in August when she and her son went to Dr. Barker's office.

While Dr. Barker was on the witness stand he had his book in his hand, and we find in the record the following reference to it:

"Q.    When did you begin that treatment?    A.    I can give you the exact date by referring to my book.

"Q.    Refer to it and refresh your memory.    A.    I have here a memorandum, obtained from this book for convenience. The first time—

"Mr. Rowe:    'I object to your using that paper.'

"The Court:    'You refer to your book.'

"Q.    How many visits did he make to you after the eleventh day of April, 1895?    A.    Well, if I could refer to this list I have copied from this book, I could tell in a moment. . . . . .

"The Court:    'You may use your list and refer to your book to see if it is accurate.' "

When this witness again took the stand for defendant in rebuttal, he again made use of the book, and explained private

marks made by him in it, at which time the following took
place, viz:

"Mr. Estes: 'I want to show the jury this.' [Book
passed around to the jury.]

"Q.   Where is the name De Mars there?   What does
that stroke mean?   A.   That stroke means that day, the
eleventh, I prescribed for him at my office." . . . . . . .

Afterwards, when the book was offered in evidence, it
was rejected by the court, on the ground that if the book was
intended to have been offered, it should have been offered in
chief.

Dr. Kerley, who was the family physician of Mrs. Wolfe,
testified that he prescribed for De Mars in November, 1894,
for remittent fever, and did not see the boy again until the
first of December, 1895, when he made an examination and
found that the boy's lungs were "rapidly breaking down," but
says the boy died of gangrene of the lungs, and not of con-
sumption.

Mrs. Wolfe, the mother of the boy, stated that she never
went to see Dr. Grant until this suit was instituted, and then
only went at the direction of her counsel, to find out what the
doctor would testify to on the trial of her case against this
defendant.   That her son was well and strong until the lat-
ter part of 1895, and she also stated, and in this she was cor-
roborated by her mother, co-plaintiff herein, that she and her
son did not consult Dr. Barker until August, 1895, and that
the doctor told her the boy would be all right in a short while.

There was testimony given by the neighbors of Mrs.
Wolfe and by lodge members, many of them saying that the
boy was a consumptive, and others saying that he looked all
right.

The case was submitted to a jury on instructions given by
the court of its own motion; the plaintiffs offering no in-

structions, and the court refusing those offered by the defendant.

The jury brought in a verdict for plaintiffs for the amount named in the benefit certificate, and after unsuccessfully moving for a new trial, the defendant appealed.

The court of its own motion gave instructions numbered 1 and 2 as follows:

"1. The court instructs the jury that it is admitted by the defendant, that one Alexander L. De Mars made a written application to and was admitted as a member of the defendant order and that the defendant issued to him the certificate read in evidence in the sum of three thousand dollars, payable to the plaintiffs as his beneficiaries, and that said De Mars died on April 12, 1896, and due proof of his death was furnished to the defendant.

"The defense is, that the plaintiffs have forfeited their right to any benefit under the certificate by reason of the following answers made by said De Mars in his said application which are alleged by the defendant to be untrue, and known by the said De Mars to be untrue at the time of making his said application, to-wit:

"Q. 'Have you had or been afflicted with consumption?' Answer, 'No.' Q. 'How long since you have been attended by a physician or have consulted one?' Answer, 'Have not had any.' And the following question: 'Is there anything to your knowledge in your physical condition, family history or personal history or habits tending to shorten your life, which is not distinctly set forth above?' Answer, 'Nothing.'

"The court instructs you that the burden of proof is upon the defendant to show by a preponderance of the testimony that the answers to the foregoing questions as above set forth were false, and known by the said De Mars to be false at the time they were made.

"2.　If the jury find for the plaintiffs, they will assess their damages at the sum of $3,000, with interest thereon at 6 per cent per annum from January 18, 1897, to March 15, 1898."

In his abstract of the record, counsel for defendant shows no exception to these instructions given by the court of its own motion.

But he did except to the refusal of four instructions which he asked in behalf of defendant. They are as follows:

"1.　The court instructs the jury that if at the time of making application for relief-fund membership to Royal Lodge, one of the subordinate lodges of defendant order, Alexander De Mars, agreed and contracted with defendant that any untrue or fraudulent statement or concealment of facts in his medical examination should forfeit the rights of himself and family to all benefits and privileges therein; that said De Mars was under obligation and in duty bound to answer all questions truthfully propounded to him by the medical examiner, and if you find from the evidence that he made concealment of facts in regard to his health, and that the facts upon which inquiry was made were material, which he in honesty and in good faith should have communicated to the medical examiner, and that his answers were false which he gave in response to inquiries about his health, and were so given in order to induce the defendant to issue to him its relief-fund certificate, and that he knew he was at the time of answering said material questions, afflicted with a serious disease of the lungs, and had not long prior thereto consulted with physicians in regard to his health, and had been prescribed for by them for disease of the lungs, and died within one year after being admitted into defendant order, of disease of the lungs, then your verdict must be for the defendant.

"2. The court instructs the jury that if they find and believe from the evidence that at the time Alexander De Mars was examined for admission to defendant order by the examining physician, he was asked if he ever had been afflicted with disease of the lungs and said De Mars answered, 'no;' and in the response to the question by the medical examiner, 'How long since you were attended by a physician or have professionally consulted one?' said De Mars answered, 'Have not had any,' and in response to the questions, 'Are you in good health now?' and 'Do you usually enjoy good health?' said De Mars answered each by saying, 'Yes;' and in response to the question, 'Is there anything to your knowledge in your physical condition, family or personal history, or habits tending to shorten your life, which is not distinctly set forth above?' and said De Mars answered, 'Nothing;' and if you find that said answers were false and untrue, and made for the purpose of deceiving the examining physician, and that the questions were vital and material to the risk about to be assumed by the defendant, then your verdict must be for the defendant.

"3. The court instructs the jury that if they find from the evidence that Alexander De Mars, before becoming a member of defendant order, made to it any misrepresentations (in the papers read in evidence as exhibit B and C.) with regard to having consulted a physician, his physical condition or family history, and that the facts so misrepresented actually contributed to his death, then the plaintiffs can not recover in this case, and the jury should find for the defendant. By 'misrepresentation' in this connection is meant any statement of fact not then known by him to be true.

"4. The court instructs the jury that at the time of his medical examination Alexander De Mars was under obligation and in duty bound to answer all questions truthfully,

and if you find that the facts upon which the inquiry were made were material, which he in honesty and good faith should have communicated to the medical examiner, and that he made concealment of facts material to the risk assumed by defendant, and that his answers were so made as to induce defendant to issue to him its relief-fund certificate, and that he knew that he was afflicted with a serious disease, and knowingly and intentionally made false answers, then your verdict must be for the defendant."

All of which instructions the court refused, and the defendant duly excepted at the time.

I.    Preliminary to any discussion of the form of the instructions, it must be observed that neither the answer nor the defendant's refused instructions were drawn on the theory that the answer of the assured were warranties.

Parties can not elect to try their cases on one theory in the circuit court and when defeated on that line assume a different position in an appellate court.

Having elected to consider the answers of De Mars as representations material to the risk and to show that he knowingly made false representations knowing they were false, defendant can not complain that the circuit court adopted its theory of defense and instructed the jury from that standpoint.

It is not an uncommon thing to find that parties assume unnecessary burdens in the trial courts and discover it for the first time in the appellate courts, but it is a cardinal principle in such cases that the trial courts are not to be charged with error in civil cases in permitting parties to try their own cases.

Having reference now to the error assigned, that the circuit court should have given the instruction prayed by defendant, we think we discover why the court refused the first

instruction, and it is this: That instruction did not confine the jury to the issue tendered by the answer of defendant. That answer only charged that the assured made false answers to three specific questions and yet this instruction numbered 1, which the defendant asked and the court refused, was broad enough to cover any answer which the assured made to any question in regard to his health. We think it manifest that the court properly restricted the instructions to the issue made by the parties and did not allow the jury to consider matters of defense which defendant had not pleaded. No citation of precedents is required to support this elementary doctrine. The same observation may be made as to the third instruction, which authorized a verdict for defendant if the jury showed that said De Mars made "any misrepresentations in the papers read in evidence as exhibit B. and C." Whereas the answer had singled out only three answers to three specific questions.

We can scarcely conceive of a more misleading and confusing method of trying a case of this character than to submit to an ordinary jury the whole application for an insurance policy and the certificate of a medical examiner, with its questions and answers, and leave it to them to determine what questions and answers were material when defendant only charged three were false, and yet such in effect at least is the purport of this third instruction.

Defendant insists, however, that this identical instruction was approved in Whitmore v. Lodge, 100 Mo. 47, but a reference to that case will show that all the representations were charged to have been false, and therefore the issue embraced all of them. Moreover, the court significantly remarks that the instruction in that case was in substance the same as those asked by the plaintiff in that case, and adds that where a party has asked similar instructions to those given, he is in no position to complain.

The difference between the two cases is so obvious that no argument is required to show that while such an instruction might have been proper in that case, it would afford no precedent for it under the state of the pleadings in this case. And this same vice inheres in instruction numbered 4 of the same series.

Coming now to instruction numbered 2, asked by defendant. By comparing it with the first instruction given by the court of its own motion it will be noted that the two instructions are framed to announce the same principle of law, to-wit, that the defense was false representations or answers to questions knowingly made, and not that these answers were warranties. Having asked this instruction and received one containing the same declaration, defendant can not complain that the court did not instruct that these answers were warranties. [Whitmore v. Lodge, 100 Mo. 47; Johnson-Brinkman v. Central Bank, 116 Mo. 559.]

The two instructions are different in two particulars.

The court in its instruction in addition, places the burden of proving the falsity of the answers on defendant, and this was right.

The learned judge, however, left off the words, "you will find for defendant." This was evidently an oversight, but is their omission reversible error under all the circumstances? Keeping in mind that this was the only issue to which the evidence was directed, and that the court told the jury this was the defense to the action, we can not bring ourselves to believe that the jury misunderstood the issue they were trying.

While the omitted words ought to have been added to make a perfectly correct instruction, we are so well satisfied that their absence in no way affected the result that we are unwilling to hold the instruction was so erroneous as to justify a reversal of the judgment in a cause otherwise so well tried. [State v. Umfried, 76 Mo. 404.]

II.    The point is made that the court erred in rejecting the account-book of Dr. Barker which was offered in rebuttal after the close of plaintiff's case.

The statement of the facts as to this book disposes of this objection.   Dr. Barker was called by defendant in making out its case in chief.   The record discloses that during his examination he was asked when he began to treat the assured and he said he could tell by referring to his book; thereupon the court ruled, "You can refer to your book."   He was then asked how often and at what dates he saw him and he answered, "Well, I could refer to this list I have copied from my books and tell in a moment."   Again the court ruled, "You may use your list and refer to your book to see that it is accurate;" and thereupon he testified and read to the jury the dates on which he prescribed for the assured.

At another time, while testifying, he explained certain strokes as indicating office prescriptions when the record shows the following occurred:

"Mr. Estes (counsel for defendant):   'I want to show the jury this' (book passed round to the jury)."

If this did not put the book in evidence we are at a loss to know what would.   There is no merit in this point.   [Charles v. Patch, 87 Mo. 450.]

III.    As to the point that the verdict was so glaringly against the weight of the evidence, we need only say, there was a sharp conflict of evidence.

It is true Dr. Barker testified that prior to the application, assured sought his advice and he found him suffering from consumption, "thin, emaciated, and blue in the face" and yet a number of other witnesses, among whom was Jeffrey, chief deputy of the circuit clerk of St. Louis, testified that De Mars participated in a cake-walk and dance given by this lodge in the month in which he made his application; that he

Wolfe v. Supreme Lodge.

was apparently in good health, was very active and lively, and during the initiation he was required to and did march around the room under the scrutiny of the guides three or four times, and no one saw any suspicious indications of bad health, and the regular physician of the lodge certified that after a careful examination of the thorax by ausculation and percussion he discovered no evidence of diseased lungs.

The family physician testified assured died from gangrene of the lungs, superinduced by pneumonia.

The weight of the evidence and the credibility of the witnesses were for the jury, and there was abundant evidence to justify their verdict if they believed it.    [James v. Association, 148 Mo. 1.]

The trial judge refused to disturb the verdict, and it is not our province to pass on the weight of evidence.

After full examination of this record, we find no reversible error and the judgment is affirmed.

*Sherwood, P. J.*, and *Burgess, J.*, concur.