# KERN v. SUPREME COUNCIL, AMERICAN LEGION OF HONOR, Appellant.

### Division One, March 12, 1902.

1. **Fraternal Beneficiary Associations:** ACT OF MARCH 8, 1879. The Act of March 8, 1879, in reference to fraternal beneficiary societies, was expressly limited to societies organized or to be organized under the provisions thereof, and, hence, had no application to societies organized under the laws of other States.

2. ————: ————: ACT OF MAY 19, 1879: APPLICABILITY. The Act of May 19, 1879, provided for the organization and incorporation of domestic fraternal beneficiary societies under the laws of this State, and it does not apply to societies chartered by other States.

3. **Power of Legislature:** CONSTRUCTION OF PRIOR LAWS. The General Assembly has no power to say that a prior law means something which was not expressed in the prior law.

4. **Fraternal Beneficiary Societies:** EXEMPTION FROM GENERAL INSURANCE LAWS. As a result of the revision of the statutes of 1889 and the enactment of the separate Act of May 11, 1889, the benefits of the law exempting fraternal beneficiary societies from the general insurance laws of the State, were expressly confined to fraternal societies organized under the laws of Missouri, and foreign fraternal societies were not so exempted. From 1881 to 1889 such exemption was accorded to foreign companies, but in 1889, the original policy not to exempt foreign fraternal societies again became the law.

5. **Laws**: REPEALED BY REVISION. Under the special act governing the revision of the statutes of 1889, all acts of a general nature revised, amended and re-enacted, repealed all prior laws relating to the same subject.

6. **Fraternal Beneficiary Societies.** Fraternal beneficiary societies organized under the laws of another State were not, in 1895, exempt from the laws of this State relating to life insurance, but only such societies as were at that time organized under the laws of this State were exempt. (Overruling Theobald v. Knights of Pythias, 59 Mo. App. 87.)

7. ———: WARRANTIES: PLEADING: DEPOSIT OF PREMIUMS RECEIVED. In a suit on the certificate of a foreign fraternal beneficiary association, issued in 1895, the statements made in the application for the benefit certificate were not warranties, and before the company can be permitted to show that these false statements and answers contributed to the contingency on which the policy was to become due and payable, it must plead such defense, and, besides, it must deposit in court the premiums it received on the policy. And unless the company meets both these requirements, the court should exclude the testimony of the attendant physicians as to the cause of the insured's death, and as to his physical condition before and after his death, and give a peremptory instruction to find for plaintiff.

8. ———: HUSBAND AS BENEFICIARY. The defense that the husband can not, under the laws of the State where the company was organized, be a beneficiary of a certificate issued to his wife, can not be raised by a demurrer to the evidence. Such issue must be pleaded.

9. ———: WARRANTIES: INNOCENT AND FRAUDULENT MISREPRESENTATIONS: TRIAL BY JURY. The statute draws no distinction between innocent and fraudulent misrepresentations in applications for insurance policies, but says that in every case the question of whether "the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable" shall be determined by a jury. The suit is not one in equity. The company may, during the life of the insured, but not afterwards, bring a suit to set aside the policy on the ground that it was procured by fraud. (Overruling Ashford v. Insurance Co., 80 Mo. App. 638, and Van Cleave v. Union Casualty and Security Co., 82 Mo. App. 668.)

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

Kern v. Legion of Honor.

*Ashley Cabell* and *H. A. Loevy* for appellant.

(1) The statements of assured in his application and examination being by contract made warranties, if untrue in any respect, no recovery can be had on the policy. 1 Beach on Ins. sec. 456; 1 Bacon Ben. Soc. (2 Ed.), sec. 197; Whitmore v. Sup. Lodge, 100 Mo. 47; Hanford v. Mass. Ben. Ass'n, 122 Mo. 50; Cobb v. Cov. Mut. Ben. Ass'n, 153 Mass. 176; Jeffries v. Ins. Co., 22 Wall. 47; Ins. Co. v. France, 91 U. S. 510. The statements and representations being warranties, their breach vitiated the certificate sued on; particularly was this true, when by the terms of the contract they were declared to be material to the risk. Aloe case, 147 Mo. 574; Whitmore case, 100 Mo. 47; 1 Bacon on Ben. Soc., sec. 212; 1 Beach on Ins., secs. 353 and 427; Jeffries v. Ins. Co., 22 Wall. 47; Ins. Co. v. France, 91 U. S. 510. Even if misrepresentations are unintentional. Cobb v. Ass'n, 153 Mass. 176. And although not known to be untrue. 13 Am. and Eng. Ency. of Law, 633; 1 Bacon, p. 415; 2 Bacon, p. 456. Fraud avoids all contracts, even those perpetrated on fraternal orders and old-line companies. (2) This is a Massachusetts and not a Missouri contract; the application for membership, although signed here, was not accepted by the appellant until approved by its chief medical examiner at Boston, on the basis of which Mrs. Kern was accepted and the certificate sued on, issued at home office in Boston; consequently, (a) Massachusetts was the place of contract; Missouri laws have no application at all. 3 Am. and Eng. Ency. of Law, 551; 11 Century Dig., column 714c. (b) Missouri statutes do not apply to foreign orders so as to subject them to the laws of this State. (c) Massachusetts law of exemption from operation of insurance laws, is part of this contract. (d) And the contract is to be construed according to Massachusetts laws. Stix case, 63 Mo. 371; Parks case, 26 Mo. App. 511; 1 Bacon, sec. 175.

*Alexander Young* and *F. H. Bacon* for respondent.

(1) Appellant is neither a fraternal beneficiary corporation under the laws of the State of Missouri, nor a life insurance company doing business on the assessment plan.   Even if it were a fraternal beneficiary corporation under the laws of Massachusetts, not having been authorized at the time of the issue of the policy sued on to do business in this State, the insurance law applies.   (a) The appellant is not a fraternal beneficiary corporation.   Toomey v. Sup. L. Knights of Pythias, 147 Mo. 129; s. c., 74 Mo. App. 507; National Union v. Marlow, 74 Fed. 775; Life Ass'n v. Jeffords, 107 Fed. 402; Cravens v. Ins. Co., 148 Mo. 583; affirmed in 178 U. S. 389. (b) Neither is this concern an assessment company.   Jacobs v. Life Ass'n, 142 Mo. 49; Logan v. Casualty Co., 146 Mo. 14; Toomey v. Sup. L. Knights of Pythias, 147 Mo. 138; Indemnity Co. v. Jarman, 104 Fed. 638; Indemnity Co. v. Berry, 50 Fed. 511.   (2) The appellant being subject to the insurance laws of the State, our statute in regard to misrepresentations becomes part of the contract, and the answer not averring that the misrepresentations contributed to the event upon which the policy was payable, disclosed no defense, and plaintiff was entitled to a peremptory instruction.   Christian v. Ins. Co., 143 Mo. 460; Aloe v. Fidelity Mut., etc., Ass'n, 55 S. W. 993.   (3) The laws of the order provide for a committee of investigation, and such a committee was a tribunal to determine the fitness of the applicant.   Its conclusion estops the society.   McCarthy v. Catholic Knights (Tenn.), 52 S. W. 142.   The medical examiner and the committee having made a physical examination of the applicant, it will be presumed that they did their duty, and that any misrepresentation was innocent, and if any fact was inaccurately stated, it was done by mistake.   Moreover, the company having a by-law providing for the trial and expulsion of any one obtaining their membership by misrepresentation, it will be considered that the

provisions of the policy are modified by the by-law, and no action having been taken in the lifetime of the member for her expulsion, it can not be taken after the person is dead. ·Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Western Funeral, etc., Ass'n, 77 Mo. App. 586. The applicant is not supposed to refer to every trivial ailment or illness not regarded as serious. Illinois Masons v. Winthrop, 85 Ill. 537; Holloman v. Ins. Co., 1 Woods C. C. 674; Cushman v. Ins. Co., 70 N. Y. 72; Brown v. Metropolitan Co., 65 Mich. 306; Ross v. Bradshaw, 1 W. Bl. 312. (4) Plaintiff in this case was a competent and proper beneficiary, because a member of the family of his wife. Whaley v. Whaley, 50 Mo. 581; Duncan v. Frank, 8 Mo. App. 289; Ferbrache v. Grand Lodge, 81 Mo. App. 271; Hoffman v. Grand Lodge, 73 Mo. App. 354; Carmichael v. Ben. Ass'n, 51 Mich. 494, 16 N. W. 871. Even if this were not so, the defendant was estopped from setting up such a defense, because the contract was executed, and moreover, the point was not raised in the lower court. (5) There is no merit in the contention that the contract sued on is a Massachusetts contract, because the application, the medical examination and admission of the member were made in this State, and the policy was delivered here, and the consideration collected by a local agent. Cravens v. Life Ins. Co., 148 Mo. 583; Corley v. Protective Ass'n, 105 Fed. 854; Ass'n v. Hurlock, 91 Md. 585, 46 Atl. Rep. 957; Ass'n v. Clements, 140 U. S. 106; National Union v. Marlow, 74 Fed. 775. (6) If the contract is governed by the Missouri law, as to misrepresentations, the evidence of the physicians, which the court refused to receive, was irrelevant and immaterial as well as incompetent, and there was no error in excluding the same. (7) There is no merit in the contention that by asking to have the policy cancelled on the ground of fraud, the action became one of equity, because the facts constitute a defense at law, unless the statute of our State as to misrepresentations excludes it, in

which case the equitable defense would have been also excluded. Ins. Co. v. Stanchfiéld, 2 Abbott C. C. 1, Dillon, C. C. 424.

MARSHALL, J.—This is an action on a benefit certificate for one thousand dollars, issued by the defendant, on October 4, 1895, to Katherine Kern, loss payable to her husband, the plaintiff. She died December 21, 1895. The plaintiff recovered in the circuit court and defendant appealed.

The defendant is a fraternal beneficial association organized under the laws of Massachusetts, having its principal office and its chief officers in Boston. It has lodges in various cities, among them Garratt Council No. 1071, located in St. Louis, of which the deceased became a member on October 4, 1895. She paid her dues and assessments to the collector of her said council in St. Louis and received the benefit certificate in that city, from the officers of said council. The defendant admits the membership of the deceased and the issuance of the certificate (except it claims the contract was entered into in Massachusetts and not in Missouri), and also admits the death. But it defends chiefly on three grounds: First, that the deceased made misrepresentations in her application for membership, and in her answers to the medical examiner, which avoid the policy, whether innocently or fraudulently made, because she warranted the truth of all she then said, and further that such statements and answers were material and necessary to enable defendant to judge whether she was a fit person to become a member; that defendant did not know they were false and did not discover their falsity until after her death; that defendant relied solely upon her statements and answers, and that her admission to membership was procured by fraud; second, that under the laws of Massachusetts and under defendant's charter and by-laws the policy is void because her husband is the beneficiary, which said laws and charter do not authorize; and third, because sections 5849 and 5850, Revised Statutes 1889, which provide that no misrepresentations in procuring a

policy of insurance shall be deemed material or avoid the policy "unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury," and further that no defense based upon misrepresentations in obtaining a policy shall be valid, "unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies," are unconstitutional.

The statements and answers referred to in the first defense are, that the deceased was asked in her application for membership: "Have you ever had any severe illness?" to which she replied, "No;" and further, "When last attended by a physician, and for what cause?" to which she replied, "Twenty years ago—Malaria;" and further, "Is there anything in your knowledge or belief, in your family or personal history, or habits tending to shorten your life, which is not distinctly set forth above?" to which she replied, "No;" and that she was asked by the medical examiner, "Are the functions peculiar to her fully established and regular?" to which she replied "Yes;" and further, "Is there any indication of any disease peculiar to her sex?" to which she replied, "No;" and further, "Now pregnant?" to which she replied "No." These answers are alleged to be false and it is averred that on the contrary she was treated in May, 1895, for hepatitis (liver trouble) and amenorrhea (suppression of menses), and that she was then pregnant, was delivered of a child on December 16, 1895, and died on December 21, 1895. The certificate of the attending physician, in her last illness, contains the following questions and answers:

| | | |
|---|---|---|
| 11. | a. State the remote cause of death; if from disease, give the predisposing cause, date of first appearance of its symptoms, its history, and the symptoms present during its progress. | a. Intestinal ulcer, Dec. 19, Tympanitis, vomiting, exhaustion, peritonitis, death. |
| | b. State the immediate cause of death. | b. Perforation of ulcer. |
| 13. | State any other facts within your knowledge pertaining to the last sickness of the deceased or which in your judgment contributed directly or indirectly to the cause of death. | Confined on Dec 16. 1895. |

The defendant offered the evidence of the family physician, the medical examiner, the physicians who conducted the autopsy, and medical experts, to show that a woman could not be pregnant over four months and not know it, to show the physical condition of the deceased before and after she became a member, and to show the cause of death. The court excluded such evidence, partly because the attending and family physicians were incompetent to testify to anything they learned while treating her, and partly because the defendant could not avail itself of any statements or misrepresentations made by the deceased, because they were not alleged to have actually contributed to the contingency or event insured against, and because the defendant had not deposited in court the premiums received by it. The court also refused defendant's instructions based upon the theory that the answers were warranties, and being false, the policy was vitiated, and gave a peremptory instruction to the jury to find for the plaintiff, which the jury did. The defendant also contended that the answer converted the case into one in equity, and, hence, that the court erred in trying it by jury as an action at law.

I.

The principal contention of the defendant is that fraternal beneficial associations, including foreign companies, are not subject to the general insurance laws of this State, and,

hence, this defendant is not subject to sections 5849 and 5850, Revised Statutes 1889, but that all statements made by the assured are warranties, and if false, whether innocently or fraudulently so—whether material or immaterial—avoid the policy.

The line of argument pursued to reach this conclusion is this: Section 972, Revised Statutes 1879, permits fraternal beneficial associations to provide for the relief and aid of the families, widows, orphans or other dependents of their deceased members, from the proceeds of assessments upon the members of such society or association. Section 973, Ib., provides: "Any such society or association heretofore or hereafter incorporated under the provisions of this act (laws of this State) may avail itself of the benefits of the foregoing section by amendment to its constitution or articles of association in the manner prescribed by this article. All such societies or associations are hereby declared exempt from the operation of the general statutes of this State in regard to insurance companies."

The provisions of these sections were first enacted by an act approved March 8, 1879 (Laws 1879, p. 65).

At the same session (1879) the General Assembly enacted other provisions relating to fraternal beneficial associations which were also embodied in the Revised Statutes of 1879. That act was approved May 19, 1879 (Laws 1879, p. 65, et seq.). The third section of that act passed into the Revised Statutes of 1879 and became section 974 thereof, and, so far as it has any bearing on the question under consideration, is as follows: "Any association formed for benevolent purposes . . . . may become a body corporate and politic *under this act;* and, incidentally, such association may provide means wherewith to assist its sick or disabled members or relieve and aid the families, widows, orphans, or other dependents of its members who may die, without being thereby subjected to the operation of the general statutes of this State relating to life

insurance; provided, that nothing herein contained shall be construed to authorize any association formed hereunder to insure the life of any member thereof for his own benefit or that of any other person."

Thereafter the General Assembly passed the Act of March 8, 1881 (Laws 1881, p. 87), which is as follows:

"Sec. 1. No benevolent or charitable association or society now incorporated or that may hereafter be incorporated under the laws of this State, or of any other State or Territory of the United States, which shall issue any certificate to or make any promise or agreement with its members, whereby any sum of money or benefit is to become due or payable to its sick or disabled members, or on the decease of a member, solely from the proceeds of assessment or dues collected from the members thereof, shall be deemed an insurance company or subject to the general insurance laws of this State.

"Sec. 2. All acts and parts of acts inconsistent with this act are hereby repealed.

"Sec. 3. By reason of many doubts as to the true meaning and intent of the present law, which it is to be the object of this act to remove, in the opinion of the General Assembly an emergency exists which requires that this act should go into immediate effect; therefore, be it also enacted that this act shall take effect and be in force from and after its passage."

So the law remained until 1889, when the General Assembly passed an act entitled: "An Act to revise and amend articles 4, 5, 6, 7, 8, 9, 10 of chapter 21, of the Revised Statutes of Missouri 1879, entitled 'Of private corporations,' and all acts amendatory thereof." This act was passed as a separate act, and was approved May 11, 1889. It is not published in the Session Acts of that year at all, probably because it is a very long act and its provisions were embodied in the Revised Statutes of 1889. The original, however, is on file in the office of the Secretary of State. Among the provisions of this

act that passed into the Revised Statutes 1889, were sections 2823 and 2824. By the provisions of section 2823, it was expressly declared that "such fraternal beneficial societies shall not in any way be subject to the insurance laws of the State, nor under the control or supervision of the insurance department of the State, nor pay any corporation or other tax." And section 2824 is as follows: "Any such society or association heretofore or hereafter incorporated under the provisions of the laws of this State, may avail itself of the benefits of the foregoing sections by amendment to its constitution or articles of association in the manner prescribed by this article."

This was the statute in force when the certificate in controversy was issued, and this is the history of the legislation in this State on this subject.

The defendant's contention is: First, that the Act of March 8, 1879 (secs. 972 and 973, R. S. 1879) exempted foreign as well as domestic fraternal societies from the operation of the general laws of the State in regard to insurance companies; second, that if this is not so, the Act of May 19, 1879, (sec. 974, R. S. 1879), enlarged the Act of March 8, 1879, so as to include foreign fraternal societies; third, that the Act of March 8, 1881, which in express terms extended the exemption from the operation of the general laws relating to insurance companies to foreign fraternal societies, conferred no new right, but was declaratory only of the right such foreign companies already had; fourth, that the failure to carry the provisions of the Act of March 8, 1881, into the Revised Statutes of 1889, did not take away such exemption from such foreign societies; and fifth, if the Act of 1881 is repealed by the Revised Statutes of 1889, and if such foreign fraternal societies are not embraced in the Acts of March 8, 1879, May 19, 1879, or in sections 2823 and 2824, Revised Statutes, 1889, then there is no law in this State regulating such foreign fra-

Vol 167 mo—31

ternal societies, and, therefore, sections 5849 and 5850, Revised Statutes 1889, as to materiality of statements and the deposit of premiums, has no application to this defendant, and the doctrine of warranty applies to it.

This contention is ingenious but it is not sound. The Act of March 8, 1879, was expressly limited to societies theretofore or thereafter organized under the provisions of that act. The defendant was organized under the provisions of the laws of Massachusetts, and neither it nor any other *foreign* society could be organized under the provisions of that act or of the laws of this State. That act only exempted domestic fraternal beneficial societies from the operation of the general laws relating to life insurance. The first proposition of the defendant, therefore, is untenable and unsound.

The Act of May 19, 1879, provided a scheme for the organization and incorporation of fraternal beneficial societies under the laws of this State. It never was intended to, and its terms could not be construed to, apply to such societies as were chartered by the laws of other States. Therefore, section 3 of that act (section 974, R. S. 1879) did not apply to foreign fraternal societies, but was limited wholly to domestic fraternal societies. Hence, the second proposition of the defendant also fails.

The Act of March 8, 1881, is the only act that ever exempted foreign fraternal societies from the general insurance laws. It created such exemption for the first time, and notwithstanding the recital in the emergency clause thereof, it was not simply a declaratory act but was a creative act. That act was passed by the Thirty-first General Assembly, and it was not competent for that body by a declaratory act to ascribe a meaning or intention to the Acts of March 8, 1879, or May 19, 1879, which the Thirtieth General Assembly had not expressed in those acts. The Thirty-first General Assembly had power to prescribe what the law should be thereafter, but it was the province of the courts and not of that session of the

Legislature to say what the law was before that time. In other words, all laws must be prescribed by lawmaking power, and it is not within the power of a later Assembly to declare that a prior Assembly meant something it did not say in the laws enacted by it. The third point made by the defendant, therefore, also fails.

The Act of 1881, was not re-enacted or carried into the revision of 1889, but on the contrary, as herein above shown, article 10 of chapter 21, Revised Statutes 1879, relating to private corporations, and all acts amendatory thereof, was revised in and by a separate act, approved May 11, 1889, and the law changed so as to read as it is in sections 2823 and 2824, Revised Statutes 1889. In other words, the benefits of that law and the exemption from the general insurance laws was expressly confined to fraternal societies that were organized under the laws of this State, and foreign fraternal societies were not so exempted.

Thus it clearly appears that from 1879 to 1881, foreign fraternal societies were not exempted from the operation of the laws relating to life insurance. In 1881, the law and policy of the State was changed, and such exemption was accorded to such foreign companies; and this continued to be the law until 1889, when the original law and policy, not to exempt foreign fraternal societies, again became the law, and the Act of 1881, ceased to have any existence.

The defendant, however, contends that the Act of 1881 was never expressly repealed, and that it is not repealed by implication. This contention is untenable. Section 6606, Revised Statutes 1889, provides: "All acts of a general nature, revised and amended and re-enacted at the present session of the General Assembly, as soon as such acts shall take effect, shall be taken and construed as repealing all prior laws relating to the same subject; but the provisions of the Revised Statutes, so far as they are the same as those of prior laws, shall be con-

strued as a continuation of such laws, and not as new enactments."

Thus, as the Act of 1881 related to fraternal societies and as the law relating to such societies was revised, amended and re-enacted at the session of the General Assembly of 1889, the Act of 1881 was repealed expressly by the revising act of 1889. Not only was it expressly repealed, but as the Act of 1889 was a revising act and related to the same subject as the Act of 1881, and substituted a new (or rather restored the original) policy, it repealed the Act of 1881, by implication. [State v. Roller, 77 Mo. 120; State to use v. Hickman, 84 Mo. l. c. 79; Meriwether v. Love, 167 Mo. 514; Endlich on Inter of Stats., secs. 198, 199, 200, 201 and 202.] The defendant's fourth point, therefore, also fails. And the result is that when the certificate involved in this case was issued in 1895, foreign fraternal beneficial societies were not exempted from the operation of the laws of this State relating to life insurance, and only such fraternal societies as were organized under the laws of this State were so exempt. Sections 5849 and 5850, Revised Statutes 1889, are continuations of the Act of March 23, 1874 (Laws 1874, p. 89), except that the requirement of that act that interest at six per cent per annum shall be deposited as well as the premiums themselves, has been omitted. That act is general. It applied to all companies. If any company or society claims to have immunity from its provisions it must put its finger upon the law granting such immunity, otherwise that law applies. Since the defendant can not point out such exemption, that law applies to it. There is therefore a law which applies to the defendant, and, hence, the defendant's fifth contention likewise fails.

It necessarily follows that what is said in Theobald v. Knights of Pythias, 59 Mo. App. 87, to the effect that foreign fraternal societies are exempt from the laws of the State relating to life insurance, is erroneous, and that case must no

longer be considered the law in this State.   It is proper to say
of that case that its conclusion was drawn from a misapprehen-
sion as to the policy of this State, and that the Court of Ap-
peals did not have before it the Act of May 11, 1889, when it
decided that case, else it would not have fallen into the error
of holding that it was the intention of the Legislature to with-
draw all fraternal societies, foreign as well as domestic, from
the general laws relating to life insurance.   The defendant
did not plead that the statements and answers of Mrs. Kern
actually contributed to the contingency or event on which the
policy was to become due and payable, and did not deposit the
premiums it received on the policy in court for the benefit of
the plaintiff, and, therefore, it showed no defense to the suit
so far as such statements and answers are concerned, and the
trial court properly excluded the testimony offered to show
that such statements and answers were false.   In fact, the de-
fendant tried the case upon the theory that it was not governed
by sections 5849 and 5850, Revised Statutes 1889, and that
such statements and answers were warranties, and being false,
they avoided the policy, and as that theory was erroneous and
untenable, it has made out no defense to this action.

It follows also that the exclusion of the testimony of the
attending physicians and medical experts, the refusal of the
defendant's instructions and the giving of the peremptory in-
struction was proper, as the answer stated no defense.

## II.

The contention that the plaintiff as husband could not
be the beneficiary under the laws of Massachusetts or under its
charter and by-laws, is not open to discussion or adjudication.
No such issue was raised in the pleadings or asserted upon the
trial in the circuit court.   It is claimed that a demurrer to the
evidence was interposed and held that this question arises under
that.   This is a misapprehension.   A demurrer to the evi-

dence challenges only the plaintiff's right to recover upon the evidence adduced in support of the issues joined. If no such issue was joined and no evidence introduced upon the subject, the demurrer to the evidence will not raise the issue nor entitle the party to have it reviewed in the appellate court. The defendant chose its grounds of defense, none others are open in this court. [Wolfe v. Knights & Ladies of Honor, 160 Mo. 675.]

## III.

The defendant claims that its answer converted the case into one in equity and that the court erred in not so treating it. The answer was framed upon the theory of warranty and a false statement, which amounted to a breach of the warranty and avoided the policy, and that such false statement was a fraud upon the defendant, and, hence, the defendant prayed to have the certificate cancelled. Under this it is claimed that notwithstanding the provisions of sections 5849 and 5850, Revised Statutes 1889, the defendant is entitled to have the policy or certificate set aside, in equity, even after the death of the assured, on the ground that it was procured by fraud. The cases of Ashford v. Ins. Co., 80 Mo. App. 638, and Van Cleave v. Union Casualty & S. Co., 82 Mo. App. 668, are relied on in support of this contention.

In neither of those cases was there any attempt made to convert the case by answer into one in equity. In both, the alleged fraud was pleaded as a defense at law.

However, the defendant further, upon the authority of the cases last cited, contends that sections 5849 and 5850, Revised Statutes 1889, apply only to innocent misrepresentations, and do not apply to fraudulent misrepresentations.

Those cases do so hold. In both of them the misrepresentation relied on was that the beneficiary was the wife of the assured while in fact she was his mistress. In both cases, this

answer was held to be a warranty, which being false, avoided
the policy, notwithstanding the misrepresentation was not
alleged to have contributed to the risk or caused the death, and
no offer was made to restore the *status quo* by refunding the
benefits received under the contract. In both cases it was held
that sections 5849 and 5850, Revised Statutes 1889, had no
application to fraudulent misrepresentations.

If those cases correctly state the law, the statute quoted
is a dead letter, and a new defense is afforded insurance com-
panies. Under such a construction, the only thing an insur-
ance company would have to do would be to provide in the con-
tract of insurance that the assured warranted the truth of all
statements and answers, then it could collect the premiums as
long as the assured lived, and after his death, defeat the policy
by showing that the statements and answers were untrue and
by the terms of the contract were warranted to be true and that
they were fraudulently made, notwithstanding the misrepre-
sentations in no manner contributed to the contingency or
event on which the policy was to become due and payable.

Such is not the law or the proper construction to be placed
on the statute. That statute was enacted to correct the evil
that had grown up, of permitting insurance companies to make
every statement or answer a warranty, and if any one, how-
ever trivial or however foreign to the risk or loss, turned out
to be untrue, to avoid the policy without refunding the benefits
the company had received. The statute draws no distinction
between innocent and fraudulent misrepresentations, and the
courts have no right to draw any such distinction. The test
applied by the statute is whether "the matter misrepresented
shall have actually contributed to the contingency or event on
which the policy is to become due and payable," and the power
to determine that question is vested by the statute in the jury,
and not in the court.

Section 5850, prescribes the same rule that has always
obtained in courts of equity, that the contract can only be

avoided upon terms; that is, that the party seeking to avoid it shall refund the benefits he has received under the contract. The statute takes away no material right that was enjoyed prior to its adoption. It is still competent for the company, *during the life of the assured but not after his death,* to bring a bill in equity to set aside the contract on the ground that it was procured by fraud. [Schuermann v. Ins. Co., 165 Mo. l. c. 652.] But in such a case a court of equity would require the company to refund the benefit it had received under the contract. Moreover, the statute only announces another rule of equity, that in order to avoid contracts for fraud it must be alleged and shown that the fraud related to a material matter, that it was believed and relied upon by the party complaining in entering into the contract. The answer in this case fails to conform to these requirements, and, therefore, it states no defense under the statutes and would not be good in equity.

In the Ashford case, supra, the Kansas City Court of Appeals said: "Plaintiff has cited us to Christian v. Ins. Co., 143 Mo. 460, a case where the assured committed suicide and the misrepresentation was as to other additional insurance. The court there said: 'It is quite obvious that misrepresentations, however numerous, cut no figure unless they produce the result pointed out in the section under comment.' But the court in that case did not, and had no occasion to distinguish between innocent and fraudulent misrepresentations. For it is expressly stated: 'The answer contains no allegations that defendant would not have issued the policy had it known the real state of the facts respecting which the answers were made. Nor does the answer contain nor the evidence disclose that any such misstatements in any way contributed to the issuance of the policy.' Defendant properly places much reliance on that statement of the court. It was evidently made by Judge SHERWOOD, who wrote the opinion, with a view of disclosing that the court was not committing itself on the question of open and willful fraud which induced the con-

tract.    But in the case in hand, the answer makes such defense
and we have therefore been put to the necessity of deciding it."

This is a misapprehension of the meaning of the language
used, the reasoning employed and the result announced in the
Christian case.    In that case no distinction was drawn, or
intended to be permitted, between innocent and willfully
fraudulent misrepresentations.    The purpose was to give full
force and effect to the statute, and to hold that no misrepresen-
tation, whether innocent or fraudulent, when based upon a
warranty of truth by the terms of the policy or not, shall be a
defense "unless the matter misrepresented shall have actually
contributed to the contingency or event on which the policy is
to become due and payable."    To avoid all possible confusion
and misunderstanding the cases of Ashford v. Ins. Co., 80 Mo.
App. 638, and Van Cleave v. Union Casualty & S. Co., 82 Mo.
App. 668, are expressly disapproved and overruled.

For these reasons the judgment of the circuit court is
affirmed.    All concur.