## THE STATE v. JONES, Appellant.

### Division Two, January 23, 1900.

1. **Examination of Defendant's Person: BY SHERIFF: BY PHYSICIAN.** The exhibition to the sheriff and a physician of scars and bites on the person of defendant, which tend to identify him with the person who committed the robbery, does not infract the constitutional guarantee that no person shall "be compelled to testify against himself in a criminal case," if such exhibition is made upon a mere request, without hesitation and willingly on his part, and without any threats of force or compulsion on the part of the sheriff, and if the physician is called at the instance of the sheriff and not as a physician for the defendant.

2. **Alibi: USE IN INSTRUCTION.** It is better to use a plain English word in an instruction instead of the word *alibi*. But if, taking the instruction as a whole, it is clear that the average jury could not have misunderstood its meaning, its use therein is not error.

3. **Reading Law Books: LEGAL CONCLUSION.** Defendant's counsel has the right to state the facts of another case as reported in a law book. But he has no right to state to the jury or read from a law book the legal conclusions which the author drew or he may draw from such case.

Appeal from Marion Circuit Court.—*Hon. Reuben F. Roy,* Judge.

AFFIRMED.

*W. M. Boulware* and *G. W. Whitecotton* for appellant.

(1) The testimony of the sheriff, jailer and Dr. Clark, as to the examination, appearance and the condition of defendant's leg, on the day of his arrest, and the expressions of opinion by them that this condition was the result of a human bite, was incompetent and illegal. By the admission of this testimony, a right of defendant, recognized at common law

and guaranteed by our Bill of Rights, was invaded. Constitution, art. II, sec. 23. He was thereby compelled to furnish evidence against himself. State ex rel. v. Simmons Co., 109 Mo. 125; Counselman v. Hitchcock, 142 U. S. 547; 1 Wharton on Evid. (3 Ed.), sec. 536. It is clear that these examinations were compulsory, and made for the purpose of getting evidence to be used against defendant on his trial. Evidence thus obtained can not be used against him. Day v. State, 63 Ga. 667; State v. Young, 119 Mo. 517. (2) The testimony of Dr. Clark was inadmissible for another reason. He was the county physician and as such, it was his duty, under the employment of the county court, to treat the inmates of the jail, when called. He was called as a physician by Mr. Pratt, to examine defendant, a prisoner in jail. He made the examination. But he can not testify as to the result of this professional examination, whether voluntary or compulsory, over defendant's objection. (3) Evidence tending to prove that defendant, at the time of the offense, was at a place other than that at which the offense was committed, is evidence directed simply to the issue of guilt as raised by the plea of not guilty. If the evidence tending to prove this fact, was such as to cause a fair and reasonable doubt as to his guilt, he was entitled to an acquittal. State v. Howell, 100 Mo. 628. And defendant was entitled to a plain instruction to that effect. The instruction on this point, given by the court, was not such instruction. It declared that the alibi was a separate and distinct defense, and the question of alibi was made the principal subject of inquiry, and the doubt which would require an acquittal was declared to be a doubt "as to said alibi." (4) The trial court erred in refusing to permit defendant's counsel, in arguing the insignificance of the evidence of tracks in this case, to illustrate his argument by reference to the particularity of examinations of tracks and of comparisons with tracks of accused persons reported in Burrill on Circumstantial Evidence.

*Edward C. Crow*, Attorney-General, for the State.

(1)   Whether compulsory inspection of the accused can
be considered to violate the constitutional prohibition that he
shall not be compelled to testify against himself, depends some-
what on circumstances.   If he goes upon the witness stand,
he waives it; in this case the witness voluntarily exhibited his
limb to the jurors.   If the defendant does not go upon the
witness stand, the majority of cases hold that the jurors may
use their eyes as well as their ears, and recognizing the dif-
ficulty of drawing any line of demarkation, maintain the rule
that the accused may be required to submit his person or any
part of it to the jury for examination.   Underhill on Crim.
Evid., pp. 66, 67; State v. Ah Chewey, 14 Nev. 79; State v.
Woodruff, 79 N. C. 89; State v. Hall, 79 Ia. 674; State v.
Wierien, 66 Mo. 13; 3 Rice on Evid., pp. 690-696; Wills on
Circumst. Evid., p. 190; Wharton's Crim. Evid., sec. 315.
(2)   The court had a right to stop counsel in quoting from
a law book to the jury if it saw proper to do so.   State v.
Klinger, 46 Mo. 229; Kelly's Crim. Law, sec. 402.

GANTT, P. J.—The defendant was indicted at the Sep-
tember term, 1897, of the Marion Circuit Court, for robbery
in the first degree.   He was duly arraigned, tried, convicted
and sentenced to the penitentiary of Missouri for five years.

We are asked to reverse the judgment on four grounds.
These will be examined and discussed in the order of defend-
ant's brief.

I.   It is first assigned as error that the circuit court
erroneously permitted the sheriff and Dr. Clark to testify as
to their examination of the leg of defendant after his arrest
and to state its appearance and give their opinions that cer-
tain bruises and discolorations thereon were the result of a
human bite.   To make this point plain, it should be stated
that the prosecuting witness Charles Hunter lived on a farm

with his adopted mother, an old lady ninety years of age and with little or no mind left. A few minutes after 7 o'clock on the evening of February 18, 1897, his dog barked, and he stepped to his door and opened it and he was immediately assaulted by two men, armed with a revolver and club. He resisted, and in the scuffle they threw him to the floor and in endeavoring to extricate himself, he bit one of the robbers on the calf of his left leg. The next morning a posse tracked the fresh tracks of two men to the home of the father of defendant, and upon information of the prosecutor defendant was arrested. The sheriff, Mr. Pratt, testified that after he placed defendant in the jail at Palmyra, he asked him about the bite on his leg, if he had one, and defendant said no. "I asked him to pull off his clothing so I could examine him. He did so, and never hesitated."

By the Court: "Was there anything in your language or tone of voice or expression to indicate that you proposed if the command was refused to examine for yourself? A. No, sir, it was not necessary. I examined his leg and asked him what that was, and he looked at it and said he didn't know how it got there and afterwards said it might have been done while building a barn. He got a fall and bruised it then."

Dr. Clark was then called in by the sheriff to look at the place. He testified he was not called as a physician for defendant to prescribe for or to act as his physician but simply at the instance of the sheriff. Defendant willingly showed him his leg and the doctor testified he found a bruise on the left leg three or four inches below the knee-cap. In his opinion it was a bite of a human being.

It is now insisted these examinations were compulsory, and violated the defendant's constitutional right, which guarantees that he shall not "be compelled to testify against himself in a criminal case." [Constitution of Missouri, secs. 11 and 23 of Bill of Rights; 4th and 5th amendments to the Constitution of the United States.]

There is no evidence that the sheriff compelled defendant to submit to the examination.    There is no contradiction on this point.    The defendant willingly exhibited his bared leg to the sheriff and Dr. Clark, and however sacred his person might be, he had a right to waive the protection and we think did so in this case.

Moreover, defendant called his own physician, Dr. Coons, and his counsel requested him in the presence of the jury to exhibit his leg.    This he did, and Dr. Coons examined it, and testified that the condition of the leg was due to enlarged veins and could not possibly have been caused by a bite through winter clothing in February previous to the trial in November.

On cross-examination Dr. Coons testified that he had made a previous examination of defendant's leg and the condition then was different from the condition at the trial.    The lines ran differently.    He saw teeth bruises on the first examination.

Under this state of evidence we think no error was committed in permitting the sheriff and Dr. Clark to detail their observations of defendant's leg.

II.    It is strongly insisted also that the court erred in refusing defendant's request for his instruction number 3, which told the jury that if the evidence of defendant tending to prove that at the time of the alleged robbery he was at his father's house was sufficient to induce a reasonable doubt as to whether he was at the house of Hunter at said time, the jury would acquit him.

This unquestionably was the law, and should have been given if the court had not already given substantially the same instruction in its own instructions, number 4, in these words:

"No. 4.    The jury are instructed that the defendant alleges as a defense in this cause, an alibi, that is, he says he was not present at the time and place of the alleged robbery, but was elsewhere.    Now if the jury find from the evidence in the cause that the defendant was elsewhere than at the place of the

alleged robbery at the time of the alleged robbery, then they should find the defendant not guilty and, if, upon a full consideration of all the evidence in the cause, the jury have a reasonable doubt as to said alibi, they should acquit him."

Counsel criticise this instruction as being unprecedented. It is complained that the court used a Latin word "alibi." This is true, but it is of such common use that it is doubtful whether the average juryman would hesitate a moment as to its meaning.    However, the court interpreted it fully to the jury.    Having done this it told the jury that if the defendant was elsewhere than the place of robbery, when it was committed, they would acquit him or if they had a reasonable doubt as to said alibi they would acquit him.    While we agree with counsel that it would have been better to have used plain English words in the last clause of the instruction instead of the word alibi, we can not doubt that taking this instruction as a whole it was understood by the jury and if it was, no injury resulted, as it certainly announced a correct principle of law.

III.    It is next urged that the court erred in restricting the argument of defendant's counsel.

It appears that the learned counsel for defendant in the course of his argument was insisting to the jury that the tracks of the two men which were found leading from Hunter's house to the home of defendant were without any probative weight against defendant because they had never been identified as defendant's tracks, by comparing their size with defendant's feet or tracks, and he then proposed to state to the jury "the nature and extent of the examination and comparison and conformity of tracks" in a cause which he said had been reported in Burrill on Circumstantial Evidence, and was proceeding to state facts of said reported case, whereupon the court of its own motion refused to permit him to refer to said book or reported cases on the subject.    Counsel concede that the jury should get the substantive law of the case from the

State v. Jones.

written instructions of the court and hence counsel have no right to read law books to inform the jury as to the law, but he claims that it was his right to tell the jury or read to them what has been written by reporters and law writers to illustrate his point.    Let us see.    What was the purpose of this illustration? If it was merely to show that in some other case more care had been observed in measuring the tracks of the criminal and comparing them with defendant's feet or tracks and go no further, it would have carried little force as an illustration, and if that were all, the fact that the other case was reported in a law book might well have been dispensed with, and the illustration have been equally potential, but if as the circuit court evidently anticipated, it was the purpose of counsel to urge that because in some reported case footprints had been verified by the most careful scrutiny and measurements therefor the law attached no importance to evidence which did not measure up to the same degree of particularity, then counsel would have been treading upon forbidden ground.    It was not at all necessary to go to any law book to enforce defendant's argument that unless due care had been taken to ascertain the size of the footprints, and to compare them with defendant's it would be very inconclusive proof of itself.    Such an argument addresses itself to the most ordinary mind.    This character of argument was not forbidden, but counsel was simply admonished not to go to the law books, and state the facts of other cases for his comparisons.

While we are disposed to be very jealous of the right of one charged with crime to have full benefit of counsel and that counsel should be heard in his defense, yet we are unable to see in this particular instance how this constitutional right was seriously infringed.    Had counsel proceeded and stated the particulars of the identifications of the footprints in the case in Burrill, he could have gone no further.    He would have had. no right to tell the jury how the court ruled on that case. The most he could have said would have been to point out the

difference in the case used in noting the size or peculiarities of the footprints in each case, and of course insisted that one was more satisfactory than the other.

And this he was left free to do in this case save only he was admonished not to state what appeared in the law books. Had he been limited merely to the use of the facts as an illustration we think he should have been accorded that right, but we are clear he had no right to state to the jury any legal conclusions which he might draw from such facts. In a word we would set no bounds to counsel seeking illustrations from anywhere, but the courts must give the law to the jury, and considering the deprivation suffered in this case, we do not think it was reversible error.

IV.   As to the verdict.   The statute governed that, and no error occurred in sentencing the defendant on the verdict of guilty to the lowest punishment fixed by the law.   Section 4231, Revised Statutes, 1889.

The judgment is affirmed.   *Sherwood* and *Burgess, JJ.*, concur.