State v. Bonner.

THE STATE v. GEORGE BONNER, Appellant.

**Division Two, June 23, 1914.**

1. **ALIBI: Instruction: Homicide.** An instruction that if there be any evidence before the jury that raises in their minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed (if they find a crime was committed) they should acquit, is *held* to be clear and complete, and as definite and forcible as it was proper to make it.

2. **MURDER: Evidence: Identity of Murderer.** A murder was committed at 5:40 p. m., December 1, 1911, in a room in which there were six sixteen-candle-power incandescent shaded lights, some of them as high as a man's head and some lower. Near the door was another light unshaded. Two of those present in the room identified the defendant as one of the murderers. *Held*, sufficient evidence as to defendant's identity.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*W. M. C. Smith* for appellant.

The State must identify the person on trial as the person who actually committed the crime, and be-

yond a reasonable doubt.  Williams v. State, 130 Ala.
31; State v. Jones, 71 Mo. 591.  The burden of proof
is on the State.  State v. Hardelein, 169 Mo. 579;.
State v. Hickman, 95 Mo. 322; State v. Wingo, 66 Mo.
181.  In order to sustain a conviction of a defendant
charged with being present at the time and place of
the crime charged the State must absolutely prove that
he was there as part of its case, and if from all the
evidence there exists a reasonable doubt of his pres-
ence he should be acquitted.  State v. Tatlow, 136 Mo.
678; State v. Harvey, 131 Mo. 339; State v. Powers,.
130 Mo. 475; State v. Taylor, 118 Mo. 153; State v.
Wooland, 111 Mo. 248; State v. Howell, 100 Mo. 628.
It is improper to urge that the mere omission of a.
defendant to take the stand as a witness in his own
behalf constitutes the slightest presumption of guilt.
Com. v. Hanley, 140 Mass. 457; United States v. Pen-
dergast, 32 Fed. 19.  It is contended and urged that
such a conviction as was had herein was a gross viola-
tion of the defendant's constitutional rights.  Sec. 30.
art. 2, Constitution of Missouri.  It is contended and
urged on behalf of the defendant that the instructions.
to the jury herein should have been such as to more
definitely and forcibly direct the attention of the jury
to the evidence of the defendant's alibi herein; and
that there is no evidence or at least a sufficiency of it.
to sustain the conviction of the defendant had herein—
otherwise "Twould be recorded for a precedent, and
many an error thereby would creep into the State—it
cannot be.''

*John T. Barker,* Attorney-General, and *Ernest A.*
*Green,* Assistant Attorney-General, for the State.

(1)  The only assignment of error contained in
the motion for a new trial is that the verdict is against
the weight of the evidence.  In view of the testimony
in this case this assignment seems·to hardly need dis-

cussion. It is for the jury to settle any conflict in the testimony, and although the verdict convicts the defendant of murder in the first degree, yet, if the evidence is substantial, the Supreme Court will not disturb the verdict on the ground that it is insufficient or against the weight of the evidence. State v. Rumfelt, 228 Mo. 443; State v. Miller, 188 Mo. 379; State v. McGee, 188 Mo. 409; State v. Leabo, 89 Mo. 255. The evidence in this case as to the defendant's guilt of murder in the first degree is as strong, if not stronger than that contained in any of the published reports of other murder cases. He is positively identified by at least two disinterested witnesses as one of those who committed this deliberate murder, while a third disinterested witness testified as to the defendant's admission that he was one of the parties to the crime. This statement of the witness, Langford, was not denied by the defendant and consequently this court should now regard the same as true. State v. Larkin, 250 Mo. 218. The fact that the defendant did not actually fire the shot which killed Underwood is, of course, wholly immaterial. One who is present aiding and abetting others in the perpetration of an offense is guilty as a principal in the crime, although he did not personally participate in its commission. State v. Nelson, 98 Mo. 414; State v. Miller, 100 Mo. 606; State v. Brown, 104 Mo. 374; State v. Crab, 121 Mo. 554; State v. Forsha, 190 Mo. 331; State v. Walker, 98 Mo. 95; State v. Mittner, 247 Mo. 577. In the Crab case, *supra*, it was held that one who is present at the forgery of a deed, knowingly aiding, abetting or assisting such forgery, is guilty as a principal, although the act of signing the name with intent to forge the same was done by another person. State v. Peebles, 178 Mo. 484. The general doctrine upon this subject is laid down in 12 Cyc. 186, as follows: "All persons who are actually or constructively present at the time and place

of a crime, and who either actually aid, abet, assist or advise its commission or are there with that purpose in mind, to the knowledge of the party actually committing the crime, are guilty as principals in the second degree, although they did not themselves accomplish the purpose. Some aiding or abetting is essential, but mere encouragement is enough. Any action or gesture or utterance of advice, or incitement by one present, in aid or encouragement of the commission of a crime, will make him a principal in the second degree.'' Applying these authorities to the testimony in this case, the conclusion is unavoidably reached that the conduct of appellant in aiding and abetting Arthur Brown in the murder of Albert Underwood was such as to make him equally guilty with Arthur Brown. The verdict is amply supported by the evidence. (2) Instruction numbered nine, with reference to alibi, was expressly approved in the Arthur Brown case. State v. Brown, 247 Mo. 727.

ROY, C.—Defendant was convicted of murder in the first degree and his punishment fixed by the jury at death.

**Murder.**

Arthur Brown was convicted of killing Albert Underwood and his sentence was reversed by this court, 247 Mo. 715.

Defendant was charged with the same murder. The killing occurred in the cashier's office of the freight department of the Missouri Pacific Railway Company in Kansas City, at about 5:40 p. m. of Friday, December 1, 1911. At that time there were six men in the room occupied by Underwood. There were six sixteen-candle-power incandescent lights in the room, over which were cone-shaped shades to throw the light down upon the desks of the men at work. There was another light, without a shade, in the hall in front of the door leading into the cashier's office. John R. Barnes, an assistant cashier, sat at a desk which was within two

feet of the door.  He heard the door open, and, look-ing up, saw two negroes standing in the door with drawn revolvers, and one of them (Brown) said, "Get into the vault and get in there quick," and jumping behind Barnes's chair, fired a shot at him, burning his neck, shooting through his shirt, and setting fire to it.  He then struck Barnes over the head.  Barnes stumbled out of his chair and  ran into the vault. Barnes testified that the other man in the door was the defendant, and that defendant kept his gun on the other men in the office.  As to defendant's identity he testified as follows:

"Q.  Who was this other man who had his pistol leveled at the other boys?  A.  It was George Bon-ner, the defendant in this case.

"Q.  Are you certain in your identification of him? A.  Yes, sir.

"Q.  Is there any possibility of a mistake on your part?  A.  I think not.

"Q.  That this is the man?  A.  No, sir."

He testified that after getting into the vault he heard another shot and Underwood said, "For God's sake give a man a chance to get into the vault."  Then another shot was fired, and Underwood went into the vault saying, "Boys, I have been shot."  He died of his wound about eight o'clock the next morning. Barnes testified that there was another negro in the hallway, and that he did not previously know the de-fendant; that he passed right by defendant when he (witness) went into the vault, and that there was a light within four feet of defendant; that some of the lights were about as high as one's head, and some not quite so high.  He testified that he recognized the de-fendant four days later at the inspector's office.  On his cross-examination the following occurred: "Q. Mr. Barnes, would you state positively under oath, without any manner of a doubt whatever, taking time to consider the answer to the question, would you

swear absolutely and positively and finally and without any hesitancy or pretense of a doubt, that the man whom you saw accompanying the murderer was this man sitting at the table? A. Yes, sir.''

The robbers got $136.75 in cash, and $958 in checks.

John R. Clayton, a collector for the company, was standing in the cashier's office, and, hearing a shot, turned to the door and saw the defendant about two feet inside with his pistol leveled on the witness. Arthur Brown was near Barnes's desk and shot at Underwood. Witness than ran into the wareroom. The vault and wareroom were across an intervening room from the cashier's office. Clayton testified that he had never seen defendant before, and that he saw him again the following Monday at the detective office. He also testified that the lights in the room had shades throwing the light on the desks and leaving the rest of the room and the door in shadow.

Homer Langford, a colored man, whose real name is Weadon, who stated that he had for several years made his living by boxing, testified that on the morning after the killing he talked with defendant at a saloon, when the defendant said that he had ''made a freight house last night'' and had gotten a hundred and thirty-one dollars and a thousand dollars in checks, and had burned the checks; that about four that afternoon defendant showed him a paper and said that all he hated about it was that the fellow had died. He testified that defendant gave witness a dollar. This witness could not tell how many drinks he had taken that day, but said that he was not drunk. He had known the defendant in Omaha. After the killing of Underwood and prior to the trial, the witness had been stabbed in a fight over a woman. Officer Carter who arrested the defendant testified that defendant endeavored to avoid arrest.

Faulkner Gibbs testified that he roomed with defendant at 622 Bank street, and that they were both

in their room from four until about 7:15 p. m. on the day of the killing of Underwood. This witness was arrested on December 3, at the same time that defendant was arrested, and was in the workhouse until brought to the court as a witness in this case. He pleaded guilty to petit larceny in Omaha.

Featherstone Powell and Arthur Brown, both of whom were indicted for complicity in the killing of Underwood, testified that they had never known the defendant. Brown was under sentence of death at the time he testified.

The instruction on the subject of *alibi* is as follows:

"The court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed (if you find a crime was committed) you will acquit the defendant."

The only complaint made by counsel for defendant about the instructions is that the one on the subject of *alibi* should have more definitely and forcibly
Alibi:
Instruction.
directed the attention of the jury to the evidence on that subject. The one given was clear and complete, and was, therefore, as definite and forcible as it was proper to make it. There is no point made on the admission or rejection of testimony.

The main proposition contended for by defendant's counsel is that the evidence as to the defendant's identity is not sufficient. It is asserted that the evidence shows that there was not light enough in the
Identity of
Murderer:
Evidence.
room to enable the witnesses to see the defendant with sufficient clearness to identify him. With six sixteen-candle-power incandescent lights burning in the office, shaded though they were, and with another lamp in the hall just back of defendant as he stood in front of

the open door, it would be strange indeed if the witnesses in the room could not clearly recognize the defendant. Two of these men who were there present testified that they identified the defendant as the same man who stood just within the door. The arm of the law would be weak indeed if the oaths of two eyewitnesses were insufficient in such a case.

Counsel for defendant has much to say in depreciation of the State's witness Langford, alias Weadon, and in appreciation of defendant's witness Gibbs. There was nothing in the record of either of them to give them a very high standing with the jury, who, doubtless, convicted defendant mainly on the evidence of Barnes and Clayton.

The defendant was convicted as the result of a trial remarkably fair and free from error of any kind.

We affirm the judgment and direct that the sentence pronounced by the trial court be executed. *Williams, C.*, concurs.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All of the judges concur, except *Faris, J.*, not sitting.