THE STATE v. MAX BERKOWITZ, Appellant.—29 S. W. (2d) 150.

Division Two, June 11, 1930.

*Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Stratton Shartel,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

BLAIR, P. J.—Defendant was charged with and convicted of the crime of arson in the second degree. His punishment was fixed

by the jury at imprisonment in the state penitentiary for three years, and he has appealed.

As the sufficiency of the evidence to authorize conviction is strenuously challenged, a rather full statement of facts is required. The evidence was wholly circumstantial. Defendant operated a shoe store and shoe-repair shop on the first floor of a building at the corner of Hodiamont Avenue and Horton Street, in St. Louis, known as 1048 Hodiamont Avenue. With his wife and two children he occupied the second floor of the building as a residence. There was a third floor, but it was not shown to have been occupied at the time of the fire.

The value of defendant's stock of shoes, shoe-repairing machinery and household goods was not shown. Evidence was admitted concerning insurance policies issued to defendant. A policy for $2,000, covering at 1048 Hodiamont Avenue, was issued to defendant on March 5, 1928. Half of the insurance was on the merchandise and half on fixtures. On March 23, 1928, another $1000 policy of insurance was placed on defendant's household furniture. The fire occurred on the night of Sunday, April 29, 1928.

Evidence was offered by the State which tended to show the following additional facts: Two policemen were walking their beat on Hodiamont Avenue quite near defendant's premises at about 10:30 P. M. when an explosion was heard. By the time they could turn and look flames were shooting out of the front of defendant's store. The fire department was summoned immediately and arrived promptly. It was then found that the fire was general on the first floor and stairway and had spread to the second floor. The blaze seems to have been soon extinguished. The fire was burning furiously when first discovered, and the odor of gasoline was quite noticeable. After the fire was extinguished they discovered two glass jars, each of about five gallons' capacity, filled to within about two inches of the top with a brownish or reddish substance which smelled like gasoline. The contents had not yet ignited. Samples from each vessel were preserved. After qualifying as an expert, an assistant city chemist testified that he had analyzed the samples and found them to be gasoline. He further testified that it was possible for the gasoline in the open vessels to escape ignition under certain conditions, although the room containing it was in flames.

Defendant was seen on the morning of the fire putting some bundles in his automobile at his store. A shoe dropped out of one of the bundles. About noon of the same day he was seen putting in his automobile a large cloth-covered bundle, which appeared to be too large to go in easily. Thereupon defendant gave it a push with his foot and the bundle burst and a number of shoes fell out. One witness testified that he saw defendant going away from his store about ten minutes before the fire was discovered. Another

witness living across the street saw defendant at his place about four or four-thirty P. M. of the day of the fire.

A Mrs. Brennan lived in the building at 6061 Horton Street adjoining defendant's premises. She and her roomers had retired and were asleep when the fire was discovered. Her premises were filled with smoke and some of the glass in the windows was broken by the heat of the fire. Her first floor furniture and curtains were damaged by smoke. Thus her inhabited dwelling house was endangered by the fire. On cross-examination, Mrs. Brennan said she had not seen defendant about his premises that day. However, she was busily engaged in getting dinner and afterward took a Sunday afternoon nap.

Defendant strenuously denied starting the fire or knowing anything whatever about its occurrence until after it had been extinguished. His evidence tended to show that he and his family left home at about two o'clock P. M. They drove to the home of defendant's brother-in-law and remained there until about five o'clock P. M. They then procured some sandwiches at a delicatessen and drove out to Forest Park, where they visited the Zoo, and then went to Art Hill in the same park, where they ate their lunch. There they met Mr. and Mrs. Jannis, whom they later drove to their home about a block from defendant's store. Defendant and his family did not go home at that time, but attended a Jewish show. From there they drove to the home of Joseph Rosenfield, who lived with his family at his confectionery store at 2955 Olive Street. Defendant and his family remained there until nearly eleven o'clock that night. It took them about twenty minutes more to drive to the garage, about a block away from his home, where defendant kept his automobile. It was after putting the car away that the fact of the occurrence of the fire was first known to defendant.

Defendant and his wife testified that he was not about his store or home from two o'clock P. M. until eleven o'clock that night or a little later. He specifically denied setting the premises on fire or putting bundles of shoes in his automobile at his store or being about the place in the afternoon or shortly before the fire. Defendant and his wife were corroborated concerning their presence at the different places during the times they testified to, except there was no outside corroboration of their attendance at the Jewish show somewhere between 7:30 and nine P. M. Testimony was also offered to show that defendant sustained a good reputation for honesty, integrity and as being a law-abiding citizen. The State did not attempt to rebut defendant's good character testimony.

In an arson case it is not sufficient to establish the *corpus delicti* to show that a fire occurred. There must be proof of circumstances

from which the jury will be authorized to find the further fact that such fire was of incendiary origin. [5 C. J. 570 to 575, secs. 51 to 56; 2 R. C. L. 513, sec. 17.] In addition to proof of the *corpus delicti,* there must be proof tending to show that the accused was the incendiary. [2 R. C. L. 513, sec. 17.] Both the incendiary origin of the fire and the guilty agency of the accused may be established by circumstantial evidence. [State v. Ruckman, 253 Mo. 487, 161 S. W. 705; State v. Morney, 196 Mo. 43, 93 S. W. 1117; State v. Myer, 259 Mo. 306, 168 S. W. 717; State v. Sheline (Mo. Sup.), 225 S. W. 673; State v. Jackson (Mo. Sup.), 267 S. W. 855.]

The facts in the above cases are different from those in the case at bar, but said cases are authority for the proposition that both the *corpus delicti* and defendant's criminal agency may be established by circumstantial evidence. In the case at bar the proof of both of those essential facts rests entirely upon circumstantial evidence. Indeed, both of these important elements are established by the same facts in this case.

In determining whether or not there is sufficient evidence to support the verdict of guilt, it is our well established duty to accept as true all evidence in the record tending to show defendant's guilt, together with all inferences reasonably and properly to be drawn therefrom. The truth of the testimony and the reasonableness of the inferences to be drawn therefrom are exclusively for the jury. Tested by this rule, we are convinced that the circumstances shown and the inferences which may be reasonably drawn therefrom point so strongly to the incendiary origin of the fire and to defendant's guilty agency therein as to justify the verdict of guilty rendered by the jury.

While the value of defendant's stock of shoes, machinery and household furniture does not appear from the evidence, there is evidence which the jury had the right to believe tending to show that defendant was secretly removing a portion of his stock of shoes from his store on the day of and shortly before the fire. This fact, in connection with the recent insuring of his property for $3000, tended to show a motive for defendant to burn his property in order to collect the insurance. Defendant probably did not have a large stock of goods because he did all of his own work in the store, as well as in the shop, and it is unlikely that the stock of merchandise and his fixtures and furniture were of very great value.

The jury had the right to find that defendant was at his store within a few minutes before the discovery of the fire. Of course he had a right to be there; but if he was there his alibi evidence must have been false, and he had absolutely failed, after claiming to have been elsewhere, to account for his presence at the store so near the discovery of the fire.

The fire started in premises occupied and entirely controlled by defendant. It was under full headway when discovered. The odor of gasoline was then plainly noticeable and gasoline was found conveniently placed on the second floor, although it fortunately had not ignited. Defendant denied absolutely that there was gasoline in the jars on the second floor, instead of admitting its presence and seeking to give some reasonable explanation therefor. The inference sought to be brought out on cross-examination of the State's witnesses was that the fluid in the jars might have been water thrown into the bedroom in the effort to extinguish the fire. But there is no reason to believe the city chemist could be mistaken as to its character or that he would testify falsely concerning same. Hence, the jury had the right to find that the fluid in the vessels was gasoline and that defendant was testifying falsely concerning his knowledge of its presence in his bedroom. If the jury found that this material testimony was false, it had the right to view his other testimony in the same light.

No one except defendant was seen about the premises near the time of the fire. No one else is shown to have had access to the premises. The fire occurred at a time of the year when fires from furnaces or other heating appliances are not of common occurrence. The fire occurred eight or nine hours after defendant's testimony tended to show that use was made of any stove in his residence for cooking or any other purpose.

From all the foregoing facts and circumstances we think the jury was authorized to find not only that the fire was of incendiary origin, but that defendant himself was the incendiary. The jury had the right to believe the testimony offered by the State and to refuse to accept as true the testimony offered by defendant tending to show that he was not about the premises at a time when he could have set fire thereto.

Defendant contends that there was a fatal variance between the allegations of the information and the proof. The crime charged in the information was the setting fire to a building, not the subject of arson in the first degree, where the building fired is adjoining to or within the curtilage of an inhabited dwelling house, whereby such dwelling house shall be endangered, defined by Section 3284, Revised Statutes 1919, as arson in the second degree. Defendant insists that the proof tended to show a violation of Section 3288, Revised Statutes 1919, defining as arson in the third degree the firing of any building, etc., insured against loss or damage by fire with intent to defraud the insurer. It requires no argument to demonstrate that a person might burn an insured building to defraud the insurer and yet violate Section 3284, because the building fired happened to adjoin or be within the curtilage of an inhabited dwelling house which would be endangered

thereby. The jury was authorized to find that such was the case here.

· Defendant contends that the proof · in this case showed conclusively that the building occupied by Mrs. Brennan and the building occupied by defendant in fact constituted a single dwelling house. With this contention we cannot agree. Mrs. Brennan testified that defendant lived "next door" to her. There was a wall between the premises. They had separate yards. On cross-examination by able counsel, Mrs. Brennan testified as follows: "Q. Now, you live practically in the same building with Mr. Berkowitz? A. Just a wall between us. Q. Just a wall; just like a wall between one room and another? A. Yes."

It is a well known fact that in populous cities residence properties, as well as business houses, are built without an open space between them, and are separated by a party wall or, at most, contiguous walls. That is undoubtedly what Mrs. Brennan meant when she said there was a wall between the houses. It does not appear that there were doors connecting the two premises.

By Instruction 2 the jury was required to find, as alleged in the information, that defendant set fire to a building adjoining an inhabited dwelling house occupied by Mrs. Brennan, which was endangered by the fire. The jury was authorized to and did find such to be the facts, and defendant's contention of variance between the allegation and proof is without merit.

The State called Mrs. Grace Brown, who testified that she had been a tenant of defendant on the third floor of the building occupied by him and his family and that, about six weeks before the fire, defendant gave her notice to move. On being asked by Mrs. Brown the reason for the notice, defendant said he wanted the premises and intended to make different arrangements. The admission of this testimony is urged as error on the ground that it was too remote and was immaterial. Defendant has cited numerous decisions from the Federal court and states other than Missouri setting forth the reasons generally for the exclusion of testimony which is so remote as to have no probative value upon the issue on trial. No fault can be found with the rule contended for, but we do not regard that rule as excluding the testimony here complained of. The testimony tended to show that defendant did not want the tenant about the premises for some reason and he did not see fit to tell the jury what reason he had for ordering her out. So far as the record discloses, he made no other arrangements concerning the use of the third floor prior to the fire. If the notice was given six weeks before the fire, it was soon after defendant had taken out $2,000 of his insurance. We think the testimony of notice to Mrs. Brown and the reasons therefor had some bearing on the question of preparation by defendant. The

weight of the testimony was for the jury. We hold that it was admissible under this record.

Complaint is made because the State was permitted to cross-examine defendant concerning matters not referred to in his examination in chief. A witness named Mrs. Augustine was brought into the court room and defendant was asked if he knew her and, upon admitting his acquaintance and stating that she lived across the street from his place, defendant was asked if he had not inquired of Mrs. Augustine whether the police department or any one else had spoken to her about the fire. Defendant was required to answer and said he did not remember and was then asked if, about three days after that, he did not have Mrs. Augustine come to his home and do some work and if he did not then ask her if she would come to court and be a witness for him and say he was not at his home on the Sunday of the fire and that he would pay her well for such testimony.

Defendant strenuously denied any such conversation. Thereupon, the State called Mrs. Augustine as a witness and sought to show by her the occurrence of such a conversation. The trial court ruled it was not proper rebuttal. The inquiry was competent to affect defendant's credibility as a witness. Had he admitted that he had sought to hire Mrs. Augustine to testify as indicated, it would have shown that defendant was attempting to manufacture evidence. No motion was thereafter made to strike out the cross-examination complained of. The defendant is not in position to complain in this court and the assignment is overruled.

Complaint is made because the court permitted hypothetical questions to be asked of the assistant city chemist which did not embrace the correct facts in evidence. When such objection was made the assistant circuit attorney requested counsel for defendant to designate the inaccuracies and omissions in the hypothetical questions. Counsel attempted to do so, and the questions were reframed. We are unable to agree with counsel for defendant that the question of the inflammability of gasoline was not a proper subject for expert testimony. At most, defendant could not have been prejudiced by the ruling. The expert chemist testified that the fluid in the jars was gasoline and the jury had the right to find that such was its character. There was no countervailing evidence. The undisputed fact then remained that the gasoline in the jars was not ignited, although the jars were open in a room, the contents of which had become quite largely ignited. Any abstract theories as to whether gasoline would or would not ignite under such circumstances would therefore have very little probative value. There is no merit in the assignment.

Complaint is made because the court refused to give defendant's Instruction B, withdrawing from the jury the right to consider that defendant had insurance on his property. While we fail to find any evidence in the record showing the value of defendant's furniture, stock and fixtures, we think the jury had the right to consider, on the question of motive, the fact of insurance and the amount thereof in connection with its recent issuance, and the evidence that defendant was secretly removing part of his stock of shoes on the day of the fire. Instruction C was properly refused because there was no evidence upon which to base it.

Defendant assigns as error the giving of Instruction 3, reading as follows:

"The court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed (if you find a crime was committed) you will acquit the defendant."

The argument is that the instruction singled out the evidence on alibi and required such evidence alone to raise a reasonable doubt of defendant's guilt before he was entitled to an acquittal, when the instruction should have told the jury that the defendant must be acquitted if the evidence as to alibi, *in connection with the other proof in the case,* raised a reasonable doubt of his presence when the premises were set on fire, if they were.

Defendant cites cases from other states and two Missouri decisions. Our own decisions are ample for our purpose. In State v. Taylor, 118 Mo. 153, 24 S. W. 449, an instruction on alibi in proper form, offered by defendant, was refused, and the State sought to sustain the judgment because that subject had been properly covered in an instruction given by the court. The given instruction required the jury to find that defendant was in some other place, that is, he was required to prove his alibi by a preponderance of the testimony, instead of merely requiring defendant to raise a reasonable doubt of his presence at the scene of the crime. There is nothing in the Taylor case to cast any doubt upon the correctness of Instruction 3, here complained of.

In State v. Crowell, 149 Mo. 391, 50 S. W. 893, the other Missouri case cited by defendant, the trial court referred to the defense of alibi as "a well-worn defense." This was properly held to be an improper disparagement of the defense of alibi; but the case is not authority for defendant's contention here.

The instruction here criticised is in the identical language of alibi instructions specifically approved in State v. Davis, 186 Mo. 533, 85 S. W. 354; State v. Brown, 247 Mo. 715, 153 S. W. 1027, and State v. Bonner, 259 Mo. 342, 168 S. W. 591, and is in substantially the language of an alibi instruction approved in State

v. Adair, 160 Mo. 391, 61 S. W. 187. The assignment is without merit.

Complaint is made of the refusal of defendant's Instruction D, as follows:

"The court instructs the jury that under the allegations of the information filed against defendant, the State is bound to prove beyond reasonable doubt not only that the defendant did set fire to and burn a building situated at 1048 Hodiamont Avenue, *but it must go further and prove that the building was so set on fire by defendant, with the felonious intent of endangering the building occupied by the witness Catherine Brennan.* If the evidence fails to show beyond reasonable doubt that it was the defendant's intent or state of mind to cause the building occupied by Catherine Brennan to be endangered, then you must acquit the defendant." (Italics ours.)

It is said that the felonious intent on defendant's part of endangering the adjoining inhabited dwelling house is a necessary element of the crime defined by section 3284, Revised Statutes 1919. Defendant cites no cases in support of his contention and we are not impressed with its soundness. A mere reading of the statute appears to refute the contention. The endangering of an adjoining dwelling house must be shown as the result of the willful and intentional act of setting fire to a building, not the subject of arson in the first degree, within the curtilage of or adjoining the inhabited dwelling house endangered. A person may set fire to a building described in Section 3284 from many different motives. Such, for example, as revenge or to collect insurance. If the result of a willful act of setting fire to the described building is to endanger the inhabited dwelling house, the intent to set fire to such building is all that need be found by the jury. Instruction D was therefore properly refused.

Defendant makes complaint of the argument of the assistant prosecuting attorney in several particulars set out in the bill of exceptions and the brief. We have carefully examined the entire record relating to this subject and find that in each and every instance the trial court sustained defendant's objection to the argument now complained of. When requested to reprimand counsel, the trial court at least mildly complied and defendant failed to except to the sufficiency of the reprimand. Hence, defendant is not in position here to urge such alleged improper argument as ground for the reversal of the judgment.

We have carefully considered all of the assignments of error made by defendant. We find no reversible error in any of them. The evidence was sufficient to justify the jury in finding the defendant guilty. No complaint is made of the sufficiency of the in-

formation, verdict or judgment. Nevertheless we have examined them and find them in every way sufficient.

The judgment is affirmed. All concur.