248 S.W.2d 857 (1952)
STATE
v.
WILSON.
No. 42785.
Supreme Court of Missouri, Division No. 2.
May 12, 1952.
*858 Joseph Noskay, Milton M. Metz, St. Louis, for appellant.
J. E. Taylor, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.
TIPTON, Judge.
In the circuit court of the city of St. Louis the appellant was convicted of the crime of forcible rape and his punishment assessed at twenty-five years' imprisonment in the state penitentiary. From this sentence he has duly appealed to this court.
The prosecutrix was a nurse and worked at a city hospital. She lived in a first floor apartment on Waterman Avenue in St. Louis with another girl who also was a nurse. On December 1, 1949 prosecutrix had been out on a social engagement and came home after midnight. Her roommate was in bed and shortly thereafter she went to bed. Her roommate went to work about 6:30 a. m. Some time after that time prosecutrix suddenly awoke and saw a man crouched on the floor by the bedroom door. The man shut the bedroom door and walked over to the bed where she was lying, at which time she could recognize his features. She saw he was a negro. The appellant then mumbled something about money. Prosecutrix told him that if he would go into the other room she would get him some money. He refused to do so. He then put his hand over her mouth, opened a pocket knife and put the blade against her throat. He took a slip and put it over her head, still holding his left hand on her throat. Whenever she moved he tightened his hold around her throat and cut off her breathing. He then pried her legs apart and forcibly had sexual intercourse with her. She testified that there was penetration.
After the act of intercourse was completed the appellant walked toward the bedroom door. He came back to the bed and picked up his knife which he had apparently dropped and stated "he guessed he would just have to kill me, because I would tell the police," but stated he would not kill her at that time but if she told the police he would come back and kill her. As he left he disconnected the telephone.
The prosecutrix waited about five minutes and then went next door to a friend's home, told her what had happened and the friend called the police. Shortly thereafter the police arrived and she gave them a description of her assailant. That night the appellant was arrested and the next day the prosecutrix positively identified him as her assailant. She also positively identified him at the trial.
Clemens R. Maise, assistant director of the police laboratory in St. Louis, testified that he removed from the trousers worn by appellant at the time of his arrest four hairs from a member of the white race. He further testified that he removed from the bed sheet taken from the prosecutrix a number of brown woolen fibers which were identical with the brown woolen fibers used in the manufacture of appellant's trousers.
The appellant's defense was an alibi. He admitted that he had worked in the building where the prosecutrix lived about two weeks before the assault.
The appellant has not filed a brief in this court. Under these circumstances we shall treat the various grounds in his motion for a new trial as his assignments of error.
*859 He states in his motion for a new trial that the trial court erred in not sustaining his motion for a directed verdict.
From the above facts, we are of the opinion that there was sufficient substantial evidence to sustain the verdict of the jury. State v. Mitchell, 339 Mo. 228, 96 S.W.2d 341.
At the trial the victim positively identified the appellant as her assailant. It was not necessary for her to identify his voice, to state that he had a mustache or to describe his clothes. She did state that his clothes were dark. The fact that no knife or cap belonging to the appellant was found would not destroy her identification. The fact that the appellant did not make a confession in no way destroys the sufficiency of the state's evidence. The victim positively testified that there was penetration. There are other reasons assigned as to why the court erred in not sustaining appellant's motion for a directed verdict. They are trivial and have no merit; for instance, in his motion for a new trial he states that there was no evidence that there was found any trace of semen on his trousers. Even if true that would not be grounds for reversible error. The fact that he put a knife point against prosecutrix's throat is evidence that she resisted as much as possible under the circumstances. We hold there is no merit in this assignment.
In his motion for a new trial appellant contends that the court erred in not excluding the state's exhibits because they were "not connected with the defendant as promised in the offer of proof by the State that no clear evidence was adduced tracing the materials from the place they were obtained to the research bureau, and that said material evidence was not formally introduced into evidence."
The trousers were taken from the appellant when he was arrested by Sergeant Girard and he took them to the police laboratory for examination. Officer Ralph Kaveney testified they were the trousers worn by appellant when he helped arrest him.
Another exhibit was a pair of women's pants which were worn by prosecutrix at the time she was attacked. They were obtained from the victim's apartment by officer Claude Pelham and Sergeant Girard. Pelham identified them as belonging to the prosecutrix and stated he took them to the police laboratory.
Officer John McDonough took a sheet from the bed upon which the prosecutrix was lying at the time of the attack, put his initials on it and sent it to the police laboratory. At the trial he identified the bed sheet.
Clemens R. Maise, assistant director of the police laboratory, testified that he had possession of these exhibits from the time they were delivered until they were used in the trial. They were properly connected up with the appellant as promised by the state.
These exhibits were shown to the jury and, therefore, put in evidence, even if not formally introduced. Wolfe v. Supreme Lodge Knights and Ladies of Honor, 160 Mo. 675, 61 S.W. 637.
Appellant contends that the trial court erred in not giving an instruction on circumstantial evidence. There was direct evidence to support every material issue in this case and no instruction on circumstantial evidence was necessary. State v. Hubbard, 223 Mo. 80, 122 S.W. 694; State v. Davis, 237 Mo. 237, 140 S.W. 902; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227.
Error is assigned because the trial court permitted the prosecuting attorney to ask witnesses who had testified concerning the appellant's good character whether they had heard that he had been arrested for crimes other than the one for which he was being tried.
The extent to which such cross-examination may go is largely within the discretion of the trial court. Such questions are permissible to test a witness vouching for the good character of appellant. If a witness admitted that he had heard of such alleged acts of misconduct, such admission would tend to weaken his testimony that appellant's reputation was good. State v. Mitchell, supra. Without objection the appellant testified that he had been arrested for "becoming the father of a *860 kid" in the year 1948. He probably meant he had been arrested for the offense of felonious carnal knowledge of one Ethel May Pugh. Under the circumstances it cannot be said that the appellant did not have a fair trial and that the questions were not asked in good faith. State v. Carroll, Mo.Sup., 188 S.W.2d 22.
Appellant assigns as error the fact that the court did not instruct "the Jury that the statement of witnesses that defendant had been previously arrested was for the purpose of attacking their credibility and not for the purpose of proving the arrest, and as such was not to be used as evidence against the defendant." Appellant did not request nor offer such an instruction and, it being a collateral matter, the court was not required to give one. State v. Bell, 359 Mo. 785, 223 S.W.2d 469.
Appellant contends that instruction No. 4 is erroneous because it uses the word "alibi" and does not state that the defense of an alibi is a defense the law allows. The use of the word "alibi" would be understood by a jury and we ruled its use was not error in the case of State v. Jones, 153 Mo. 457, 55 S.W. 80. We think the language used in this instruction would be understood by the jury to acquit the appellant if the jury believed that his alibi was true. The instruction contained the following language, "Now, in this connection, you are instructed that you should acquit the defendant unless the evidence in the case, taken as a whole, including that of an alibi, satisfies you of defendant's guilt beyond a reasonable doubt." Moreover, the appellant did not request a more explicit instruction. We find no error in the instruction given by the court.
The following assignments for a new trial are too general and indefinite to preserve anything for our review:
"8. The Court erred in not declaring a mistrial when the prosecutor used impassioned and inflamatory remarks in his argument to the Jury.
"9. The verdict of the Jury was against the weight of the evidence.
"10. The verdict of the Jury was arrived at through bias and prejudice of the Jury toward the defendant's race and color.
"11. The verdict of the Jury was such as to constitute cruel and unusual punishment."
Each of these assignments has been held to be too general to preserve anything for our review. See State v. Tippett, 317 Mo. 319, 296 S.W. 132; State v. Francis, 330 Mo. 1205, 52 S.W.2d 552; State v. Adams, 318 Mo. 712, 300 S.W. 738; and State v. Higginbotham, 335 Mo. 102, 72 S.W.2d 65.
It follows that the judgment of the trial court should be affirmed. It is so ordered.
All concur.