**STATE of Missouri, Respondent,**

**v.**

**Bobby Lee GRIFFIN, Appellant.**

No. 47691.

Supreme Court of Missouri,

Division No. 2.

June 13, 1960.

William B. Kelleher, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Robert E. Hogan, Special Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Bobby Lee Griffin appeals from a judgment, entered upon the verdict of a jury, imposing a sentence of twenty-five years' imprisonment for the murder, second degree, of Wesley Huson. The defendant has filed no brief. We review the assignments of error in his motion for new trial. State v. Lunsford, Mo., 331 S.W.2d 538 [1], a companion case. Defendant's principal complaints involve evidence admitted in the State's case in chief of other crimes committed by defendant within an hour of the crime for which he was on trial over objections interposed on behalf of defendant. He also complains of certain instructions.

The homicide occurred at Bradley's Tavern, Menard and Lafayette Streets, in the City of St. Louis, at or soon after 9:00 p. m., November 24, 1958.

After stating the charge against defendant, the State's attorney in his opening statement, over objections interposed, outlined the evidence hereinafter set forth concerning the actions of Norman Lunsford and defendant at Pat and Rose's Tavern and thereafter while with a taxi operator who answered a call for a taxi at Pat and Rose's Tavern on the theory that such evidence was admissible to establish the identity of defendant. He thereafter stated the facts involved in the charge for which defendant was on trial.

Defendant's attorney reserved the making of his statement, and we find nothing of record at this point indicating any issue of identity or alibi to be presented by defendant.

A plat, drawn to a scale of ⅛ inch equalling a foot, of the location, Hickory and Seventh Streets, and the interior of Pat and Rose's Tavern was identified by the State's first witness and introduced in evidence. The interior, with the fixtures, of said tavern was described in detail by said witness. Rose Poleete, Delia Meyer, Ray Beesley, Mr. and Mrs. James Henderson, Arthur Nichols and John Manteer were in Pat and Rose's Tavern when Norman Lunsford and defendant entered about 8:15 p. m. Witnesses Mr. and Mrs. Henderson and Beesley testified to the following occurences at Pat and Rose's Tavern, making use of the plat in connection with their testimony. Lunsford had a .38 caliber revolver, with a pearl handle, which he showed to Rose Poleete and laid on the bar. Defendant told Beesley not to give them any trouble. Beesley answered: "As long as that man has the gun, he is the boss." Defendant replied: "That's right, he's the boss." Mrs. Henderson went to a phone booth and called the police. Nichols and Manteer got in a scuffle over a coat and defendant, who is 6 feet, 5 inches tall and weighs 175 to 185 pounds, came over and shoved them up against a beer box. About this time Lunsford fired his revolver. The shot struck the wall to the left of the door and approximately a foot below the ceiling. Nichols started to sit down and Lunsford poked his gun in Nichols' ribs and said: "I told youse to get out." Nichols, Manteer and Henderson thereupon left the tavern by the front door. While this was occurring Mrs. Henderson left the tavern by a side door. Defendant told Rose Poleete to call a cab. She hesitated. Lunsford said:

"Either call it or I will shoot you." She made the call.

William E. Patch, Jr., answered the call for a taxi. He went to the door of the tavern, looked in, saw no one and stepped back on the sidewalk. The door opened and Lunsford asked Patch if he was the taxi driver. Patch answered. Lunsford said, "I will be with you in just a minute." Mrs. Henderson, who was in the street, called to Patch who returned to his taxi and started his motor. Lunsford and defendant ran out of the tavern and Lunsford, with a revolver in his hand, struck the door handle, breaking it, got in the front seat, put the gun to Patch's head and told him to get going. Defendant got in the back seat. Lunsford ordered Patch to drive to East St. Louis. They crossed on the MacArthur Bridge. Lunsford paid the toll as they passed the collector. Then while they were still on the bridge, Lunsford struck Patch over the right eye with the revolver. Defendant then struck Patch three or four times on the back of the head and went into Patch's jacket, where he carried his small change, and into his right hip pocket, where he carried his bills, taking a little more than $40. While this was occurring Lunsford struck Patch on the back of the head with the gun, saying he was going to give Patch a "pistol whacking" in East St. Louis. Defendant stated they would kill him. Arriving in East St. Louis Patch was ordered to stop and get out. Lunsford and defendant also got out. Defendant took Patch's cap, put it on and ordered him to get on the floor in the back seat. Defendant then took the driver's seat. Lunsford got in the rear seat, kept the gun at Patch's head, and said they were going to Texas. They drove back over a bridge and soon stopped. Lunsford told Patch to give him his billfold. Patch had no billfold, but laid some quarters and dimes, which defendant had missed, on the seat. Lunsford tried to open the trunk but could not. Defendant said he had thrown Patch's keys away. (The keys were later recovered.) Patch was ordered to stay down on the floor. We waited a couple of minutes, looked out, saw Lunsford and defendant were gone, and called his dispatcher. He then walked to the street intersection and found he was at Julia and Menard. Julia Street is about 144 feet from Lafayette Street, and the rear of Bradley's Tavern is about 80 feet from Julia Street.

The State thereafter adduced testimony covering the charge for which defendant was on trial. There are ten bar stools at the bar of Bradley's Tavern. A few, perhaps ten, minutes after 9:00 p.m., John Bradley was back at his bar, Michael Ogilvy was seated on the tenth stool, and Wesley Huson, the deceased, was seated on the ninth stool, when Lunsford and defendant, passing John Fraley and J. W. Hendon, entered Bradley's Tavern. Defendant and Lunsford ordered two bottles of beer. Defendant seated himself on the seventh stool and put $6 or $7 in dimes, quarters and halves on the counter. Lunsford went over and dropped some money in the juke box. Fraley and Hendon took stools near the entrance. Bradley placed two bottles of beer on the bar for Lunsford and defendant. Lunsford took a revolver out of his pants, rolled the cylinder on it and put it back in his pants. Bradley said: "You better put that thing away. It is going to get you in trouble." Lunsford seated himself at the eighth stool and started talking to Huson. Huson was heard to say he was not afraid of Lunsford or his gun. Lunsford and Huson got off their stools, as did Ogilvy and defendant, and Lunsford threw the gun on Huson. Ogilvy jumped away, and defendant said: "Shoot the son-of-a-bitch. Shoot the son-of-a-bitch." The gun snapped the first time and then Lunsford shot Huson. Huson fell, mortally wounded. Defendant picked up a bar stool by its legs with both hands and, raising it over his head, struck Huson on the head three times. Huson was not armed and had nothing in his hands when he was shot. Lunsford commenced backing away, and fired three or four additional shots. The last shot struck an icebox and ricocheted into Bradley's left arm and body.

Lunsford was arrested a few minutes later. Defendant was arrested December 5, 1958.

Witnesses Ogilvy and Hendon identified Lunsford· and defendant as the men who assaulted and killed Huson. Witnesses Beesley, and Mr. and Mrs. Henderson identified defendant as Lunsford's companion at Pat and Rose's Tavern, Mrs. Henderson testified Lunsford and defendant entered Patch's taxicab. Witness Patch was of the opinion defendant was the man with Lunsford but on cross-examination stated "I would say I wouldn't be positive."

Defendant and his wife were his only witnesses. Their testimony tended to establish that defendant was at home with his wife and little girl on the evening of the homicide. Defendant testified he did not know Lunsford.

There was no rebuttal testimony.

■ Defendant's motion for judgment of acquittal at the close of the evidence was properly overruled. State v. Lunsford, Mo., 331 S.W.2d 538, 540[5]; State v. Stidham, Mo., 305 S.W.2d 7, 15[13]; State v. Lamb, Mo., 278 S.W. 1009, 1012[2].

■ The general rule that proof of a separate and distinct crime is not admissible, with the exceptions thereto, is stated in State v. Reese, 364 Mo. 1221, 274 S.W. 2d 304, 307, where· Court en Banc in disposing of the issue quoted and applied the following from 20 Am.Jur., Evidence, § 312: "Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. * * * It is not proper to admit details of separate and distinct crimes for the purpose of showing identity." See State v. Taylor, Mo., 324 S.W.2d 643, 646[4]. The State by its evidence in chief in the instant case established the details of the prior offenses mentioned by the witnesses as though defendant had been upon trial for their commission. In this, as in the Reese case, proof of the presence of Lunsford and defendant at Pat and Rose's Tavern and in Patch's taxi did not necessitate a showing of all the details of their disturbances of the peace, assaults, batteries, robbery by means of a dangerous and deadly weapon and other offenses prior to the homicide for which defendant was on trial; and the admission in evidence of the details of such offenses which had no tendency to identify defendant as a participant in the homicide or to refute his alibi constituted reversible error. State v. Spray, 174 Mo. 569, 584 et seq., 74 S.W. 846, 851; State v. Barker, Mo., 249 S.W. 75, 77[3–5]; State v. Tabor, 95 Mo. 585, 590, 8 S.W. 744, 746·; People v. Ascher, 126 Mich. 637, 86 N.W. 140, 142, 143; Annotations, 62 L.R.A. 193; 105 Am. St.Rep. 976.

Broadly stated, logically relevant testimony is not to be rejected on the ground it incidentally establishes another offense. Under the State's evidence defendant and Lunsford were accomplices in committing the homicide. The testimony of their presence at Pat and Rose's Tavern and in Patch's taxicab and so much of their actions as was relevant and necessary to refute defendant's alibi and establish his presence at the murder of Huson was competent. State v. Hawley, Mo., 51 S. W.2d 77, 78[4, 5], and cases cited; State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 28[11–13].

■ Lunsford's revolver was not recovered by the officers. The State established that the bullet fired by Lunsford into the wall at Pat and Rose's Tavern and those fired at Bradley's Tavern, which killed Huson and wounded Bradley were .38 caliber bullets and had been fired from the same weapon. The testimony necessary to establish this was competent. State v. McKeever, supra; State· v. Richetti, 342 Mo.

1015, 119 S.W.2d 330, 338[6–10]; State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 80 [1, 18, 20].

■ We find no error in the admission of the plat of Pat and Rose's Tavern (State's Exhibit 1). State v. McHarness, Mo., 255 S.W.2d 826, 829[6].

■ Testimony of witnesses identifying a photograph of Lunsford (State's Exhibit 2) as defendant's companion at Pat and Rose's Tavern, in Patch's taxicab, and at Bradley's Tavern (State v. Childers, Mo., 313 S.W.2d 728, 731[5]; State v. Ball, 321 Mo. 1171, 14 S.W.2d 638, 644[6]; 23 C.J.S. Criminal Law § 852, p. 51), and identifying the striped cap (State's Exhibit 3) worn by Lunsford while at said places and at the time of his arrest a few minutes after the homicide (State v. Tripp, Mo., 303 S.W.2d 627, 632[4], and case cited; State v. Gerberding, Mo., 272 S.W.2d 230, 233 [2]; State v. Wilson, Mo., 248 S.W.2d 857, 859[4, 5]) was relevant, as were said exhibits.

■ We have carefully examined the remaining assignments with respect to the admission of testimony in defendant's motion for new trial; and with the observation that evidence not competent if offered in chief sometimes becomes admissible in rebuttal (State v. King, 342 Mo. 975, 119 S.W. 2d 277, 283[11, 12]; 22 C.J.S. Criminal Law § 619; 23 C.J.S. Criminal Law § 1053), and that testimony of a hearsay nature is usually inadmissible, we consider said assignments need not be developed.

■ The court gave an instruction (defendant making no request therefor, see State v. Scown, Mo., 312 S.W.2d 782, 789[7]) limiting the jury's consideration of any other offense participated in by defendant to "the sole purpose of shedding light, if it has that effect, upon the identification and presence of the defendant at the time of the shooting of the deceased, and for no other purpose." Defendant asserts the instruction emphasized the evidence of other crimes, amounted to an improper comment on the evidence, invaded the province of the jury, and was highly prejudicial, without pointing out why the instruction was erroneous in said respects. The instruction was a cautionary instruction for the benefit of defendant. Like instructions have been held not to comment improperly on the evidence. State v. Park, 322 Mo. 69, 16 S.W.2d 30, 34[13]; State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1026 [25]; State v. Mandell, 353 Mo. 502, 183 S.W.2d 59, 65[17].

■ Defendant contends the use of the word "alibi" in the instruction thereon constituted a highly prejudicial comment upon the evidence and tended to ridicule the testimony of defendant, "alibi" being in the minds of the general public and the jurors a colloquialism suggestive of a contrived excuse or falsehood resorted to by a guilty party to avoid the consequences of his crime. The point is not well taken and stands overruled. State v. Jones, 153 Mo. 457, 55 S.W. 80, 81(2) where an instruction to like effect but subject to greater criticism on the issue presented was approved; State v. Wilson, Mo., 248 S.W.2d 857, 860[10]; 23 C.J.S. Criminal Law § 1204, p. 760, note 64. See also State v. Bonner, 259 Mo. 342, 348, 168 S.W. 591, 592[1]; State v. Abbott, Mo., 245 S.W.2d 876, 879[7–9]; State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, 706 et seq.

For the error noted in the admission of evidence, the judgment is reversed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.